PEOPLE *v* MAGUIRE

1. CRIMINAL LAW—EVIDENCE—POLYGRAPH TEST—ADMISSIBILITY.

The results of a polygraph test are incompetent evidence in a criminal prosecution and a defendant's offer to take such a test, or his refusal to take one, is immaterial and should be excluded upon proper objection.

2. CRIMINAL LAW—MISTRIAL—POLYGRAPH TEST—REFERENCE.

The trial judge abused his discretion in granting a mistrial upon the prosecutor's motion, without defendant's consent, at defendant's trial for second-degree murder even where defense

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 831.
　Physiological or psychological truth and deception tests. 23 ALR 2d 1306.
　Propriety and prejudicial effect of comment or evidence as to accused's willingness to take lie detector test. 95 ALR2d 819.
[3] 21 Am Jur 2d, Criminal Law §§ 195, 197.

counsel, in the jury's presence, made an isolated reference to defendant's agreement to take a polygraph test, where the trial judge made no effort to expunge the reference by a curative instruction, or to reprimand the defense attorney for making the reference, or to caution him from further injecting the agreement into the proceedings.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—MISTRIAL—DOUBLE JEOPARDY.

Retrial of a criminal defendant, necessitated by the trial judge's abuse of discretion in granting a mistrial upon the prosecutor's motion without defendant's consent, is barred by constitutional prohibitions against double jeopardy (US Const, Am V).

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 December 13, 1971, at Detroit. (Docket No. 10882.)   Decided February 24, 1972. Leave to appeal denied, 387 Mich 781.

Fabian W. Maguire, charged with second-degree murder, appeals the denial of his motion to dismiss the charge because of double jeopardy. Reversed and defendant discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, and *John C. McColl,* Assistant Prosecuting Attorney, for the people.

*Larry S. Davidow,* for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and DANHOF, JJ.

DANHOF, J.   Defendant was arrested and charged with murder in the second degree, MCLA 750.317; MSA 28.549.   Preliminary examination was held on November 4, 1970, and defendant was bound over for trial on a charge of second-degree murder.   The

jury trial began on December 8, 1970. On the third day of trial, during the cross-examination of Detective Quain, the following occurred:

*Cross-examination by Mr. Davidow:*
"*Q.* Did you know that Mr. Maguire was challenged to submit to a lie detector test?
"*Mr. Turton:* Your Honor, I ask that the jury be excused.
"*The Court:* The jury may be excused.
[*The following had in the absence of the jury.*]
"*Mr. Turton:* I am extremely sorry this happened. Counsel, with his years at the bar, knows better than this, and I know he does, and so does the court. I am going to have to ask for a mistrial under the circumstances.
"*The Court:* I think I will have to give it. I had this before.
"*Mr. Davidow:* If the court please, may I be heard in this respect, first. I am familiar with the rule. I have had a case before the Supreme Court of our state on this issue. However, we have a statement that was taken under the direction of Mr. Turton in which Mr. Maguire was asked would he submit to a lie detector test, and Mr. Maguire said yes.
This issue is available to the defendant only, not the prosecution, about reference—
Wait until I get through, sir.
"*Mr. Turton:* I haven't said anything.
"*Mr. Davidow:* You stood up.
"*Mr. Turton:* You have been standing around here.
"*Mr. Davidow:* If counsel needs the exercise, I—
"*Mr. Turton:* Keep right on talking.
"*Mr. Davidow:* Your Honor, do I need this smart-alecking on the part of counsel?
I can find the exact case, if the court please.
"*Mr. Turton:* The problem is he made the statement here. There is no question of our bringing it up or ever referring to it.
"*Mr. Davidow:* This is a matter for the defendant and the defendant only, but the examination of Mr.

Maguire, without benefit of counsel, following these hours of interrogation in a closed car, following his being arrested, he having told the entire story which is consistent only with innocence, he was questioned whether or not he would submit to a lie detector test and he said yes and that was never accepted. I think we have the right to show that to the jury to show where the truth is.

"*The Court:* I am afraid I will have to grant a mistrial.

"*Mr. Davidow:* Might I ask, under the circumstances, if the court please, that we have the defendant admitted on bail?

"*The Court:* No.

"*Mr. Davidow:* This charge is absolutely irresponsible and unjustified.

"*The Court:* I don't see it that way.

"*Mr. Davidow:* I want to say, for the purpose of the record, if the court please, and I say this in all seriousness, I want to make it clear here so there will be no misunderstanding on the part of the court, it is my opinion the examination failed to disclose any element of murder, first or second degree. I seriously doubt whether any other offense was shown, and that the defendant was entitled to admission on bail. The mere pendency of this charge operates in this instance as a denial of bail, and I charge, if the court please, that counsel for the prosecution, Mr. Turton, has deliberately insisted upon an extraordinary, unjustified charge to deny this man release on bail and punish him while this case is pending.

"*The Court:* From what testimony I have heard, I feel it is clearly a case of second-degree murder.

"Bail denied.

"Mistrial granted.

"He will be referred to the sheriff.

"Bring in the jury."

Thereafter the trial judge indicated that a retrial would be scheduled and defendant filed a mo-

tion to dismiss on the grounds that the defendant had once been placed in jeopardy. The motion was denied by the trial court on December 21, 1970. On February 12, 1971, this Court granted leave to appeal and remanded in order that bail might be set for the defendant.

Defendant urges that to retry him for second-degree murder in light of the trial court's declaration of a mistrial would be to place him twice in jeopardy for the same offense in violation of the double jeopardy clause of the US Const, Am V, made applicable to the states in *Benton* v *Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). Thus, the question posed is, under what circumstances may a defendant be retried after a trial judge has declared a mistrial; in this case on motion of the prosecutor.

In a recent opinion, Chief Judge Lesinski ably outlined the current law on double jeopardy. See *People* v *Gardner,* 37 Mich App 520 (1972). We see no reason to reiterate here what he said in *Gardner, supra,* except that we must "look at the circumstances of the case to determine whether the trial judge correctly determined, in a 'scrupulous exercise of judicial discretion,' that a manifest necessity prevented the ends of public justice from being served by a continuation of the proceeding". *Gardner, supra,* p 531.

In *United States* v *Jorn,* 400 US 470, 486; 91 S Ct 547, 557–558; 27 L Ed 2d 543, 557 (1971), Justice Harlan said:

"Yet we cannot evolve rules based on the source of the particular problem giving rise to a question whether a mistrial should or should not be declared, because, even in circumstances where the problem reflects error on the part of one counsel or the other, the trial judge must still take care to assure him-

self that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.

"In sum, counsel for both sides perform in an imperfect world; in this area, bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the government and the defendant. The trial judge must recognize that lack of preparedness by the government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee. *Cf. Downum v United States*, 372 US 734; 83 S Ct 1033; 10 L Ed 2d 100 (1963). Alternatively, the judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."

The question is whether the trial judge in this case, taking into account all of the circumstances of the case, exercised sound discretion to ascertain that there was a manifest necessity for the granting of the mistrial. The record discloses but one reference to a lie detector test. There was no effort made by the judge to correct the statement by an instruction and then reprimanding the defense attorney from further injecting it into the proceedings. This is not a case of continued improper activity on the part of defense counsel after a ruling by the trial judge, but rather, one isolated instance. We have previously held that because the results of a polygraph test are incompetent evidence the offer to take such a test, or the refusal to take it, is imma-

terial and should be excluded upon proper objection. *People v Paul F. Baker,* 7 Mich App 471 (1967); *People v McLaughlin,* 3 Mich App 391 (1966). Since the record discloses that the defense attorney did not ask for the mistrial, nor did he consent to it, it is our conclusion, after an examination of the entire record, that the one reference to a lie detector test did not create such a manifest necessity which prevented the ends of public justice from being served by a continuation of the proceedings.

Therefore, we conclude under the circumstances of this case reprosecution of the defendant would violate the double jeopardy provisions of the Fifth Amendment of the Constitution.

Reversed and defendant is ordered discharged.[1]

All concurred.

---

[1] To the members of the profession we emphasize that this case is limited strictly to its facts. It is not to be interpreted as an open invitation to defense counsel to engage in such tactics which are calculated to induce the people to ask for a mistrial. Such conduct could create such a manifest necessity requiring a mistrial in order to assure that the ends of public justice would not be defeated.