## PEOPLE v ALVIN JOHNSON

Docket No. 55577. Argued May 8, 1975 (Calendar No. 12).—Decided
    April 21, 1976. Rehearing denied 396 Mich 992.

During the joint trial of Alvin Johnson and Eddie Perkins for
    armed robbery, the Wayne Circuit Court, Michael L. Stacey, J.,
    granted a mistrial on motion of defendant Perkins when John-
    son's attorney referred to a polygraph test. Before the defend-
    ants' second trial began, Johnson and Perkins were convicted,
    on their pleas of guilty, of assault with intent to rob and steal
    being unarmed by the Wayne Circuit Court, James Montante,
    J. The Court of Appeals, V. J. Brennan, P. J., and Gillis and
    Bashara, JJ., granted the prosecution's motion to affirm John-
    son's conviction (Docket No. 15479). Defendant Johnson ap-
    peals. *Held:*

    1. Once a defendant has been placed in jeopardy, unless he
    consents to interruption of the trial, or a mistrial occurs
    because of manifest necessity, the state is precluded from
    bringing him to trial again. In the absence of an affirmative
    showing that the defendant exercised primary control over the
    course to be followed and consented to the mistrial, the court
    will not find consent; however, a finding of manifest necessity
    for the mistrial would still make a second trial permissible.

    2. The mere mention of a polygraph test, without more, did
    not constitute such manifest necessity as would justify a mis-
    trial.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 476.
[2] 75 Am Jur 2d, Trial § 208.
    Reference by counsel for prosecution in opening statement to
        matters which he does not later attempt to prove as ground for
        new trial, reversal, or modification. 28 ALR2d 972.
[3] 21 Am Jur 2d, Criminal Law §§ 166, 185.
[4] 21 Am Jur 2d, Criminal Law §§ 165–169.
[5–7, 12, 13] 21 Am Jur 2d, Criminal Law §§ 180, 195.
    What constitutes accused's consent to court's discharge of jury or to
        grant of state's motion for mistrial which will constitute waiver
        of former jeopardy plea. 63 ALR2d 782.
[8, 9] 76 Am Jur 2d, Trial § 1078 *et seq.*
[10, 11] 21 Am Jur 2d, Criminal Law § 495.

3. A plea of guilty, while it waives nonjurisdictional defects in the proceedings, does not waive all of the defendant's right; where the result of the right asserted would be to prevent a trial from taking place, it is not waived by a plea of guilty. The defense of double jeopardy after the start of the first trial, because its assertion would prevent a second trial taking place at all, is not waived by the subsequent plea of guilty.

4. The first trial improperly ended in a mistrial and the defendant was placed in jeopardy twice in violation of his constitutional right. The conviction may not stand and the defendant must be released.

Justice Coleman, joined by Justice Fitzgerald, dissented on the ground that the order of mistrial was valid. The trial judge is best situated to make a decision on whether a mistrial is necessary to achieve the ends of justice. Although the mistrial was not in the sole interest of the defendant Johnson, because his codefendant was equally interested and demanded a mistrial, the trial judge could reasonably find that the ends of justice required a mistrial. Reference to a polygraph may not be reversible error in every case, but declaration of a mistrial would at least appear to be the product of the trial judge's solicitude. The inquiry is not whether the defendant waived his right to be tried by the first jury, but whether the defendant had primary control over the course to be followed. In the absence of a specific objection or denial of error at the time, the trial court could properly determine that defendant joined with the codefendant in seeking a mistrial. The general underlying rationale for the defense of double jeopardy, that the state with all its resources and power should not be allowed to make repeated attempts to convict the defendant, and that the prosecution, at a trial in which its case is going badly, should not be afforded another more favorable opportunity to convict, does not obtain in this case.

Reversed.

## Opinion of the Court

1. Criminal Law—Double Jeopardy—Mistrial—Plea of Guilty.

The defense of double jeopardy after a mistrial is improperly granted is not waived by a subsequent plea of guilty.

2. Criminal Law—Trial—Mistrial—Polygraph Test.

The mere mention of a polygraph test during a criminal trial, without more, does not constitute such manifest necessity as would justify granting a mistrial in the absence of a defendant's consent.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY.

The underlying idea of the constitutional guarantee against double jeopardy is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty (US Const, Am V, Const 1963, art 1, § 15).

4. CRIMINAL LAW—DOUBLE JEOPARDY.

Once a defendant has been placed in jeopardy, unless he consents to interruption of the trial, or a mistrial occurs because of manifest necessity, the state is precluded from bringing him to trial again.

5. CRIMINAL LAW—DOUBLE JEOPARDY—MISTRIAL.

Reprosecution of a defendant is prohibited by the double jeopardy clause even if a defendant benefits from a mistrial called for reasons short of those necessary to satisfy the manifest necessity standard.

6. CRIMINAL LAW—DOUBLE JEOPARDY—MISTRIAL—CONSENT.

A mistrial is not a bar to retrial of a defendant even where the mistrial was improperly declared if the action was taken with the defendant's consent.

7. CRIMINAL LAW—DOUBLE JEOPARDY—TRIAL—MISTRIAL—CONSENT.

Mere silence or failure to object to the jury's discharge is not consent by a defendant to a declaration of a mistrial; in the absence of an affirmative showing on the record that the defendant is exercising primary control over the course to be followed and consents to the mistrial, the Supreme Court will not presume to find a consent.

8. CRIMINAL LAW—TRIAL—MISTRIAL—MANIFEST NECESSITY.

The judicial discretion to declare a mistrial for such manifest necessity that the ends of substantial justice cannot be attained without discontinuing the trial is properly exercised only in very extraordinary and striking circumstances; a mere error of law or procedure does not constitute legal necessity and a mistrial should not be declared in consequence of mere irregularities which are not prejudicial to the rights of the persons prosecuted.

9. CRIMINAL LAW—TRIAL—MISTRIAL—MANIFEST NECESSITY.

An apparently inadvertent question asked by defense counsel

concerning a polygraph test which was instantly objected to and never answered by the witness and which was not part of an overt effort to misuse the judicial system to prevent the defendant from receiving a fair trial was not sufficiently prejudicial to warrant a mistrial based on manifest necessity or even on request of a defendant; the declaration of a mistrial should not be made lightly and the trial judge must always consider the possibility of curing error with a warning.

10. CRIMINAL LAW—PLEA OF GUILTY—WAIVER OF DEFECTS.

A plea of guilty generally waives all nonjurisdictional defects in the proceedings, but the defendant may always challenge whether the state had a right to bring the prosecution in the first place by raising rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing the defendant, or the state's authority or ability to proceed with the trial.

11. CRIMINAL LAW—PLEA OF GUILTY—WAIVER OF RIGHTS.

A plea of guilty does not waive a right wherever it is found that the result of asserting the right would have been to prevent a trial from taking place.

DISSENTING OPINION

COLEMAN and FITZGERALD, JJ.

12. CRIMINAL LAW—DOUBLE JEOPARDY—MISTRIAL.

*Declaration of a mistrial on the demand of a codefendant after a reference to a polygraph examination had been made by defendant's attorney does not bar retrial of the defendant on the grounds of double jeopardy where the defendant apologized for the improper reference and remained silent after the demand for a mistrial, the defendant had primary control over the course to be followed, and the trial judge could reasonably find that the ends of justice required a mistrial (US Const, Am V, Const 1963, art 1, § 15).*

13. CRIMINAL LAW—MISTRIAL—CONSENT.

*The proper inquiry in determining whether a defendant consented to declaration of a mistrial is whether the defendant had primary control over the course to be followed, and a reviewing court may examine the totality of the circumstances in considering whether such control existed.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Norris J. Thomas, Jr.,* Assistant Defender) for defendant.

WILLIAMS, J. In this case of first impression we consider the impact of a plea of guilty on the constitutional defense of double jeopardy. We hold that the defense of double jeopardy, as it affects whether a trial should have taken place at all, is not waived by a subsequent guilty plea. As this question is dispositive, we do not consider other issues raised by defendant, except we hold that the mere mention of a polygraph test without more does not constitute such manifest necessity as would justify a mistrial. We reverse the Court of Appeals and the trial court, and the defendant is discharged, as he was twice put in jeopardy, contrary to the mandate of the Federal and Michigan Constitutions.

I—FACTS

Defendant Alvin Johnson's first trial, with co-defendant Eddie Perkins on the charge of armed robbery, ended in a mistrial when, two days into the trial, Johnson's attorney asked a prosecution witness, a police officer:

"*Q.* Didn't he [Alvin Johnson] deny he was implicated, involved in the alleged holdup?

"*A.* Yes, he did.

"*Q.* Did he also ask you whether or not he could submit to a lie detector test?"

The witness never answered as the prosecutor instantly objected and the jury was excused.

The people moved for a mistrial, maintaining:

"The people would make a motion. Any reference to a lie detector test has to be prejudicial, and I would ask for a mistrial, with reluctance. No reference to a polygraph or lie detector test has been given. There has been no reference to that at all and is absolute grounds for a mistrial."

Perkins' counsel concurred. Johnson's counsel did not, maintaining, "All I can say is I didn't realize it was improper". He also noted, "I feel kind of small", but never directly commented one way or another on whether he would consent to a mistrial.

The court took the motion under advisement and adjourned until the following day. When court reconvened, the prosecutor withdrew his motion, claiming "that the inadvertent reference to a polygraph could be corrected by proper instructions from the court". Perkins' counsel, however, renewed his motion. "I feel that the harm done by this statement that was taken hinders any due process." The trial court granted the mistrial.

Before the second trial began, Johnson's counsel moved for dismissal on the grounds that the trial court abused its discretion in granting the mistrial. He maintained that the mere mention of the word polygraph would not be grounds for ending proceedings, that defendant's silence relative to mistrial signifies neither acceptance nor consent, and that consent must be affirmatively and knowingly given, which did not occur in the case of Johnson or his counsel. Further, he suggested that the court might have granted a mistrial as to defendant Perkins, who requested it, and could

have permitted the trial to continue as to defendant Johnson. While the court observed this was a unique idea, the motion was denied.

New counsel for Johnson subsequently moved to dismiss on double jeopardy grounds. The judge denied the motion on the ground of self-induced error by counsel for defendant Johnson.

Shortly after impanelling of the jury for the second trial began, codefendant Perkins pled guilty to an added count of assault with intent to rob and steal while being unarmed, and was endorsed as a witness to testify against Johnson. Johnson then pled guilty to the same added count and was sentenced to 5 to 15 years.

The Court of Appeals granted the prosecutor's motion to affirm the conviction. We granted leave, limited to "the question of whether the grant of a mistrial over defendant-appellant's objection barred subsequent prosecution under double jeopardy provisions of the Federal and state Constitutions". 392 Mich 756 (1974).

## II—THE PROTECTION AGAINST DOUBLE JEOPARDY

The Fifth Amendment to the United States Constitution[1] and article 1, § 15 of the Michigan Constitution guarantee an individual against twice being put in jeopardy.[2]

---

[1] The protection was held enforceable against the states through the Fourteenth Amendment in *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

[2] The guarantee has been said to protect against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). The scope of the law of jeopardy is apparently the same under both the Michigan and United States Constitutions. *In re Ascher,* 130 Mich 540, 545; 90 NW 418; 57 LRA 806 (1902).

"The underlying idea [of the protection against dou-
ble jeopardy] * * * is that the State with all its re-
sources and power should not be allowed to make
repeated attempts to convict an individual for an al-
leged offense, thereby subjecting him to embarrassment,
expense and ordeal and compelling him to live in a
continuing state of anxiety and insecurity, as well as
enhancing the possibility that even though innocent he
may be found guilty." *Green v United States,* 355 US
184, 187–188; 78 S Ct 221, 223; 2 L Ed 2d 199, 204
(1957).

Thus, once defendant has been placed in jeop-
ardy,[3] unless he or she consents to the trial's
interruption,[4] or a mistrial occurs because of mani-
fest necessity,[5] the state is precluded from bringing
him or her to trial again. Even if defendant bene-
fits from a mistrial called for reasons short of
those necessary to satisfy the manifest necessity

[3] "[A] defendant is placed in jeopardy in a criminal proceeding once
the defendant is put to trial before the trier of the facts, whether the
trier be a jury or a judge." *United States v Jorn,* 400 US 470, 479; 91
S Ct 547, 554; 27 L Ed 2d 543, 553 (1971). "In the case of a jury trial,
jeopardy attaches when a jury is empaneled and sworn. * * * In a
nonjury trial, jeopardy attaches when the court begins to hear evi-
dence." *Serfass v United States,* 420 US 377, 388; 95 S Ct 1055; 43 L
Ed 2d 265 (1975). In the case of a guilty plea, jeopardy attaches when
the sentence is imposed. *People v Burt,* 29 Mich App 275, 277; 185
NW2d 207 (1970).

[4] Traditional analysis has been that immunity from second jeopardy
was a personal privilege which could be waived by the accused.
However, in a footnote in the recent case of *United States v Dinitz,* —
US —; 96 S Ct 1075; 47 L Ed 2d 267 (1976), the United States
Supreme Court "rejected the contention that the permissibility of a
retrial following a mistrial" depends on waiver. — US — fn 11.

[5] "Only if jeopardy has attached is a court called upon to determine
whether the declaration of a mistrial was required by 'manifest
necessity' or the 'ends of public justice.'" *Illinois v Somerville,* 410
US 458, 468; 93 S Ct 1066; 35 L Ed 2d 425 (1972).

"Examples of situations where such a manifest necessity has been
found to exist include cases where the jury is unable to agree; where
the tactical situation of an army in the field dictates the dismissal of
a court-martial; where the trial judge discovers that one or more
jurors might be biased; and where a juror, or defendant becomes ill
during trial, making his continued presence impossible." *People v
Gardner,* 37 Mich App 520, 527–528; 195 NW2d 62 (1972).

standard, reprosecution is still prohibited.[6] However, even where the mistrial was improperly declared, it is not a bar to retrial if the action was taken with defendant's consent. *State v Fenton,* 19 Ariz App 274, 276; 506 P2d 665, 667 (1973).

Mere silence or failure to object to the jury's discharge is not such consent, 19 Ariz App 274, 276; 506 P2d 665, 667.[7]

In a very recent case in which defense counsel himself requested a mistrial, the United States Supreme Court has addressed this point as follows:

"The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed * * * ", *United States v Dinitz,* — US —, —; 96 S Ct 1075, 1081; 47 L Ed 2d 267 (1976),

and the defendant must therefore do something

---

[6] "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." *United States v Jorn,* 400 US 470, 483; 91 S Ct 547; 27 L Ed 2d 543 (1971).

"We are not unmindful of the apparent irony in denying the trial court jurisdiction to proceed because of a ruling made, at least in part, ostensibly for the benefit of these petitioners. But we do not deal here with a mere technicality of the law: as the *Locklear* court explained * * * , 'Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power.' " *State v Locklear,* 16 NJ 232; 108 A2d 436, 442 (1954), quoted in *Curry v Superior Court,* 2 Cal 3d 707, 718; 87 Cal Rptr 361, 368; 470 P2d 345, 352 (1970).

[7] *Accord, Commonwealth v Baker,* 413 Pa 105, 115; 196 A2d 382, 387 (1964); *Curry v Superior Court,* 2 Cal 3d 707, 713; 87 Cal Rptr 361, 364; 470 P2d 345, 348 (1970).

*See also, People v Carlton Brown,* 23 Mich App 528, 534; 179 NW2d 58 (1970).

"Silence cannot operate against a defendant."

*Contra, Coppage v State,* 62 Okla Cr 325, 335; 71 P2d 509, 513 (1937).

positively in order to indicate he or she is exercising that primary control. Further,

"The circumstance that it is defense counsel who initiates the court's inquiry into a matter which ultimately results in an order of mistrial does not ipso facto transform counsel's expression of concern into an implied consent to such drastic ruling." *People v Compton,* 6 Cal 3d 55, 62; 98 Cal Rptr 217, 221; 490 P2d 537, 541 (1971).

"[A]n appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision", *United States v Jorn,* 400 US 470, 483; 91 S Ct 547; 27 L Ed 2d 543 (1971). Thus, in the absence of bright-line rules deliberately eschewed by the United States Supreme Court, 400 US 470, 486, we must first look to whether in the exercise of that control of the course of his own trial, highlighted by *Dinitz,* defendant Alvin Johnson approved termination of the proceedings.

It is not difficult to require a trial court to inquire whether defendant consents. Therefore, in the absence of an affirmative showing on the record, this Court will not presume to find such consent.

There was no such affirmative showing in this case. At best, defense counsel may be said to have been silent. At worst, he did not protest, but he did not assent. Therefore, we find that defendant did not personally consent to the end of the first trial. However, the finding of manifest necessity would still make the second trial permissible.

### III—DID MANIFEST NECESSITY EXIST?

A judge has the power to abort a trial before a

verdict is reached in order to prevent frustration of the ends of justice. Where "the ends of substantial justice cannot be attained without discontinuing the trial", *Gori v United States,* 367 US 364, 368; 81 S Ct 1523; 6 L Ed 2d 901 (1961), a mistrial declared for such "manifest necessity"[8] may be declared without defendant's consent,[9] and will not foreclose retrial even if it is over his or her objection. 367 US 364, 368. Because of its implications, this judicial discretion is properly exercised "only in very extraordinary and striking circumstances". *United States v Coolidge,* 25 Fed Cas 622, 623; 2 Gall 364, 365 (D Mass, 1815), cited in *Downum v United States,* 372 US 734, 736; 83 S Ct 1033; 10 L Ed 2d 100 (1963).

"A mere error of law or procedure * * * does not constitute legal necessity." *Curry v Superior Court,* 2 Cal 3d 707, 714; 87 Cal Rptr 361, 365; 470 P2d 345, 349 (1970). "[A] mistrial should not be declared in consequence of mere irregularities which are not prejudicial to the rights of the persons prosecuted." *People v Watson,* 307 Mich 596, 606; 12 NW2d 476 (1944).

---

[8] The principle was first expressed by Justice Story in *United States v Perez,* 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824), when writing for a unanimous court, he said:

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner."

[9] "[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution." *United States v Jorn,* 400 US 470, 485; 91 S Ct 547; 27 L Ed 2d 543 (1971).

The question of whether merely mentioning the term polygraph constitutes more than such a "mere irregularity" has been considered by our Court of Appeals. In *People v Paul F Baker,* 7 Mich App 471, 476; 152 NW2d 43 (1967), Judge, now Chief Justice, KAVANAGH, found that references to a polygraph test within the context of a particular case did not constitute reversible error and could be cured by relevant instructions to the jury.[10]

Cautionary instructions would be inadequate, the Court of Appeals has suggested, where testimony is admitted regarding refusal to take a polygraph test. *People v Tyrer,* 19 Mich App 48, 50; 172 NW2d 53 (1969).

Particularly helpful is *People v Paffhousen,* 20 Mich App 346, 350; 174 NW2d 69 (1969), where the complaining witness explained she had changed her story because "you don't fool a polygraph machine". The trial court denied counsel's motion for a mistrial.

"Defendant contends that the trial court erred in denying his motion for a mistrial. *To so hold would be tantamount to requiring a mistrial every time the word 'polygraph' is mentioned in a criminal prosecution.* It was not established that the complainant had submitted to a polygraph examination nor was an attempt made to introduce the results of any such examination. The word 'polygraph' was not used by counsel, but was volunteered by the witness. It was properly objected to, and the trial court properly ruled that the subject not be pursued any further. It was not, in fact, pursued, and no prejudicial error resulted." 20 Mich App 351. (Emphasis added.)

---

[10] "If evidence of the fact of a polygraph test be admitted or improper argument about it be made even though no objection to either be interposed, the court should instruct the jury as to the unreliability of such tests." 7 Mich App 471, 476.

In a case similar to that before us today, the Court of Appeals found reversible error barring retrial where the court did order a mistrial. *People v Maguire,* 38 Mich App 576; 196 NW2d 880 (1972).

During cross-examination of a detective by defense counsel, counsel asked:

"*Q.* Did you know that Mr. Maguire [defendant] was challenged to submit to a lie detector test?"

Before the witness responded, the prosecutor requested that the jury be excused. The judge granted a mistrial upon the prosecutor's request. 38 Mich App 578, 580.

The Court of Appeals, "taking into account all of the circumstances of the case", 38 Mich App 581, found the judge committed error. The panel noted, "There was no effort made by the judge to correct the statement by an ˉinstruction". 38 Mich App 581. Also important was that "[t]his is not a case of continued improper activity on the part of defense counsel after a ruling by the trial judge, but rather, one isolated instance". 38 Mich App 581. Further, the defense attorney did not ask for the mistrial, nor did he consent to it. 38 Mich App 582. Under the circumstances, therefore, the court did not find such "manifest necessity which prevented the ends of public justice from being served by a continuation of the proceedings". 38 Mich App 582.

A rule becomes clear, after reviewing the Court of Appeals' decision in *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), where they found a mistrial would have been appropriate. 17 Mich App 292, fn 12. There, not only did the prosecutor insert the issue of a polygraph, 17 Mich App 291, but he apparently deliberately contravened the

court's warning to discontinue this approach.[11] 17
Mich App 292. It is clear that the Court of Appeals
believed a mistrial was warranted because "[t]he
prosecutor here made every conceivable effort to
prevent the defendant from having a fair trial". 17
Mich App 291. They noted:

> "It is rare indeed that an appellate court is con-
> fronted with such an openly disclosed intent on the part
> of a trial attorney to place before a jury improper and
> prejudicial testimony or such flagrant disregard of a
> ruling by the court." 17 Mich App 292.

*Brocato* was not a case of inadvertence, or of a
single inappropriate question. Rather, it was part
of a pattern of contumacious conduct on the part
of the prosecutor. In the former instance, without
a showing of prejudice, a mistrial would not be
appropriate. In the latter, it certainly would be.

This is not true in the case before us. In the
instant case, there was apparently an inadvertent
question asked by defense counsel, which was
instantly objected to, and therefore never an-
swered. There was no overt effort to misuse the
judicial system to prevent defendant from receiv-
ing a fair trial.

Under the circumstances, it does not appear
that legal necessity existed for the discharge of the
jury. The trial court ordinarily is in a superior
position to determine when manifest necessity
demands a mistrial, and must exercise its discre-
tion to protect the ends of justice. Such discretion,

---

[11] This colloquy followed the trial court's warning that questioning
about polygraph examinations was "treading on dangerous ground",
17 Mich App 292:

"*Q.* Miss Whitfield, one last question: In the process of your investi-
gation of this case and to ascertain the truthfulness of Lana Jane
Robinson, was she at any time—*get ready, Mr. Bucknell* (defense
counsel)—offered a polygraph examination? (Emphasis supplied.)"

however, should be exercised with the object of safeguarding defendant's double jeopardy protection. Because of the high value placed on defendant's not being required to undergo the discommodity of a second trial, the declaration of a mistrial should not be made lightly, even when it is made ostensibly for the protection of defendant. The trial judge must always consider the possibility of curing error with a warning.[12]

In the instant case, we do not think sufficient prejudice was demonstrated to warrant a mistrial. We do not think the mention of a polygraph test, without more, was sufficient to justify granting a mistrial even to Perkins, who requested it, and certainly was not enough to support the mistrial as to defendant Johnson. A different issue might have arisen had the witness answered the question, but it is not necessary to resolve that matter now.

## IV—Effect of the Guilty Plea

It is clear that in the instant case, defendant did not consent to the mistrial and it was not required by manifest necessity. Had the second trial not ended in a guilty plea, there is no question that it would have been improper as a violation of defend-

---

[12] The California Supreme Court has presented some reasons why defendant might not opt for a mistrial.

"A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial. He may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above." *Curry v Superior Court,* 2 Cal 3d 707, 717; 87 Cal Rptr 361, 367; 470 P2d 345, 351 (1970).

ant's constitutional right against twice being put into jeopardy. The main question of the case now faces us and that is whether the guilty plea waived that constitutional right.

## A. What Guilty Plea Waives

Clearly, the plea of guilty is itself an affirmative waiver of certain preconviction rights of the accused. See *Right to Appeal Plea Bargain Convictions,* 69 Nw U L Rev 663, 664 and fn 3–6 (1974). *People v Zunno,* 384 Mich 151, 156; 180 NW2d 17 (1970). The proper focus of Federal habeas corpus inquiry is the nature of the advice and voluntariness of the plea. *Tollett v Henderson,* 411 US 258, 267; 93 S Ct 1602; 36 L Ed 2d 235 (1973).[13]

Thus, in the guilty-plea trilogy of *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), *McMann v Richardson,* 397 US 759; 90 S Ct 1441; 25 L Ed 2d 763 (1970), and *Parker v North Carolina,* 397 US 790; 90 S Ct 1458; 25 L Ed 2d 785 (1970), and in *Tollett v Henderson, supra,* the United States Supreme Court recognized that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. * * * [A criminal defendant] may only attack the voluntary and intelligent character of the guilty plea * * * ". 411 US 258, 267.

However, despite the apparently sweeping na-

---

[13] "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' *McMann v Richardson, supra,* at 771. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." 411 US 258, 266–267.

ture of this language, the Supreme Court has not construed the effect of guilty pleas to preclude contesting all constitutional rights.[14] The *Brady* trilogy and *Tollett* did not change the established principle that a guilty plea does not waive defendant's right to contest whether a statute under which he or she is accused is constitutional, *United States v Ury,* 106 F2d 28 (CA 2, 1939), or whether the information or indictment stated an offense, *Kolaski v United States,* 362 F2d 847, 848 (CA 5, 1966).

## B. What the Guilty Plea Does Not Waive

Generally, however, the guilty plea waives all nonjurisdictional defects in the proceedings. See *People v Ginther,* 390 Mich 436, 440; 212 NW2d 922 (1973). Why an accepted, unqualified[15] plea of

[14] Our own decisions have followed this lead. Thus, for example, a plea of guilty waives a claim of an illegally gained confession. *People v Catlin,* 39 Mich App 106, 108; 197 NW2d 137 (1972). *But see People v Millard,* 394 Mich 99; 228 NW2d 783 (1975), for indication that a guilty plea does not waive all preconviction rights of the accused.

[15] As for defendant's qualified plea, the Federal circuits have apparently split as to whether defendant may plead guilty while preserving the right to raise on appeal constitutional challenges to evidence. *See, e.g., United States v Cox,* 464 F2d 937, 945 (CA 6, 1972).

"In sum, while we can see that the proposed procedure [allowing defendant to plead guilty, contingent on his right to appeal on nonjurisdictional grounds from his own plea] may ease the docket pressures confronting many district courts, we believe the disadvantages in terms of the internal consistency of our criminal process, the accuracy of appellate review, and conflict with the hoary doctrine of avoiding constitutional questions if possible, far outweigh the putative gains."

*Contra, United States v Caraway,* 474 F2d 25, 28–29 (CA 5, 1973), opinion vacated as moot, 483 F2d 215 (CA 5, 1973) (involving a plea of nolo contendere, the legal equivalent of a guilty plea).

"Our rationale for recognizing this type of express agreement is two-fold. First, we are reluctant to establish a rigid rule requiring a defendant to undergo the costly and futile ordeal of a complete trial, when the State could easily prove its case by the evidence claimed to be illegally obtained and by no other evidence, and the defendant merely seeks to preserve a single, nonjurisdictional issue * * * .

guilty should cure error that a guilty verdict or finding would not[16] has probably been best answered by the Supreme Court's observation that a guilty plea is different "in purpose and effect from a mere admission or an extra-judicial confession, it is itself a conviction". *Kercheval v United States,* 274 US 220, 223; 47 S Ct 582; 71 L Ed 1009 (1927). Thus, in the case of a guilty plea, the conviction is based not on possibly tainted evidence, but on defendant's admission in open court.

"A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. * * * The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment * * * ." *McMann v Richardson,* 397 US 759, 773; 90 S Ct 1441; 25 L Ed 2d 763 (1970).

The Court has, itself, however, recognized that the double jeopardy defense is different from the *McMann* type of defenses qualitatively. In *Robinson v Neil,* 409 US 505, 509; 93 S Ct 876; 35 L Ed 2d 29 (1973), Justice Rehnquist, speaking for a unanimous court, distinguished this protection

Second, of the combined requisites, 'voluntariness' and 'intelligence' * * * for equivalence to a valid guilty plea, a *nolo* plea, conditioned on right to appellate review of a motion to suppress evidence, might now * * * meet the test of being 'voluntary,' but the conditioning of the plea on a right to appellate review demonstrates that it was not so 'intelligently' entered as to waive deprivation of a nonjurisdictional defect sought to be reviewed; and more especially so, where, at the time of pleading, the practice of the reviewing court is to honor such a condition allowed by the trial court." (Citations omitted.)

[16] As we observed in *People v Ginther,* 390 Mich 436, 441; 212 NW2d 922 (1973), while one might find waiver of the right to appeal alleged constitutional violations as part of the consideration for permitting a plea of guilty to a lesser offense, "[p]utting aside the legitimacy of such consideration, all pleas are not bargained pleas". (Notes omitted.)

from others, such as the *Mapp v Ohio* exclusionary rule, designed to deter unlawful police conduct.

"While this guarantee [double jeopardy] * * * is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial."

Thus, the right is closer to those which were untouched by *Brady, et al.,* such as the right to challenge the constitutionality of the statute under which the state proceeded, which may be asserted even after a plea of guilty. Defendant may always challenge whether the state had a right to bring the prosecution in the first place.

The first application of this approach came when the Supreme Court, in *Blackledge v Perry,* 417 US 21, 31; 94 S Ct 2098; 40 L Ed 2d 628 (1974), applied the *Robinson* double jeopardy reasoning to find that a guilty plea did not foreclose a defendant from collaterally raising a due process right in attacking a plea-based conviction in Federal habeas corpus proceedings.

First, the Court distinguished the due process right from those in the *Brady* trilogy and *Tollett.*

"Although the underlying claims presented in *Tollett* and the *Brady* trilogy were of constitutional dimensions, none went to the very power of the State to bring the defendant into court to answer the charge brought against him. * * * In the case at hand, by contrast, the nature of the underlying constitutional infirmity is markedly different. Having chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process Clause from calling upon the respondent to answer to the more serious charge in the Superior Court. Unlike the de-

fendant in *Tollett,* Perry is not complaining of 'anteced-
ent constitutional violations' or of a 'deprivation of
constitutional rights that occurred prior to the entry of
the guilty plea.' 411 US at 266, 267. Rather, the right
that he asserts and that we today accept is the right
not to be haled into court at all upon the felony
charge." 417 US 21, 30.

Then, using the *Robinson* double jeopardy rea-
soning, and applying it to the due process clause,
the Court found:

"While our judgment today is not based upon the
Double Jeopardy Clause, we think that the [Robinson
double jeopardy clause] language aptly describes the
due process right upon which our judgment *is* based.
The 'practical result' dictated by the Due Process
Clause in this case is that North Carolina simply could
not permissibly require Perry to answer to the felony
charge. That being so, it follows that his guilty plea did
not foreclose him from attacking his conviction in the
Superior Court proceedings through a federal writ of
habeas corpus." 417 US 21, 31.

The foundation laid in *Blackledge* was com-
pleted by the Supreme Court in its per curiam
opinion in *Menna v New York,* 423 US 61; 96 S Ct
241; 46 L Ed 2d 195 (1975). There, citing *Black-
ledge,* the Court rejected the state's reliance on
*Tollett* and held that a guilty plea did not waive
the double jeopardy defense.

"Where the State is precluded by the United States
Constitution from haling a defendant into court on a
charge, federal law requires that a conviction on that
charge be set aside even if the conviction was entered
pursuant to a counseled plea of guilty." 423 US 62.

Thus, it is clear that the United States Supreme
Court, while recognizing that certain rights of

defendant may be waived by a subsequent plea of guilty, does not say that is true of all rights. Certainly it is true that those rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing the defendant,[17] or the state's authority or ability to proceed with the trial may never be waived by guilty plea.[18] These rights are similar to the jurisdictional defenses in that their effect is that there should have been no trial at all. The test, although grounded in the constitution, is therefore a practical one. Thus, the defense of double jeopardy, those grounded in the due process clause, those relating to insufficient evidence to bind over at preliminary examination and failure to suppress illegally-obtained evidence without which the people could not proceed are other examples. Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right.

## V—CONCLUSION

Defendant Alvin Johnson's first trial ended in

---

[17] *E.g., United States v Liguori,* 430 F2d 842, 848–849 (CA 2, 1970), *cert den,* 402 US 948; 91 S Ct 1614; 29 L Ed 2d 118 (1971), where there was no governmental interest in seeing defendant punished, since it was the statutory scheme which violated the privilege against self-incrimination. "Where the state's interest in punishing the defendant's conduct is lacking, the plea as an admission becomes meaningless, for it cannot bestow upon the state the authority to prosecute or punish the defendant." Shwartz, *The Guilty Plea as a Waiver of 'Present but Unknowable' Constitutional Rights: The Aftermath of the* Brady *Trilogy,* 74 Col L Rev 1435, 1462 (1974).

[18] "The federal courts have stated that one can never waive a jurisdictional defect. * * * For a court to have jurisdiction, there must be a valid indictment or information, substantiated by sufficient legal evidence to show the accused probably committed the crime with which he is charged." Mullady, *Appellate Review of Constitutional Infirmities Notwithstanding a Plea of Guilty,* 9 Houston L Rev 305, 314 (1971). (Notes omitted.)

an improperly called mistrial. Thus, defendant was placed in jeopardy twice in violation of his constitutional right. Because this right goes to the very heart of the government's ability to place defendant on trial, the subsequent guilty plea does not foreclose defendant from raising this defense. We therefore find that since the second trial should not have taken place at all, the conviction may not stand and defendant must be released.

The Court of Appeals and the trial court are reversed.

KAVANAGH, C. J., and LEVIN, J., concurred with WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

COLEMAN, J. *(dissenting).* I disagree with the reasoning in support of my colleagues' decision to set aside a guilty plea and dismiss defendant from court jurisdiction.

Two days into a joint trial, the prosecutor objected to a question by defendant's counsel and made a motion for a mistrial. Although the prosecutor withdrew his objection and motion, codefendant Perkins demanded a mistrial, saying, "I feel that the harm done by this statement that was taken hinders any due process". Defense counsel remained silent, neither objecting to nor requesting a mistrial, but saying "All I can say is I didn't realize it was improper" and "I feel kind of small".

Mistrial was granted. A second joint trial on the armed robbery charge was begun over defendant's claim of double jeopardy. After the jury was impanelled, defendant pled guilty to an added count of assault with intent to rob and steal while being

unarmed. (This was after his codefendant had pled guilty to the same charge.)

Now defendant claims (1) that the order of mistrial was improper, and (2) therefore, he could neither be tried on the original charge nor could he plead guilty to the reduced charge. He claims that the defense of double jeopardy is not waived by a plea of guilty.

This dissent is neither in agreement nor disagreement with the latter claim. Instead, it is directed to the conclusion that the order of mistrial was invalid in the first instance.

With the codefendant demanding mistrial, the judge had cause to believe that he could not win regardless of what he did. He chose to accede to codefendant's motion for mistrial under the circumstances.

The majority would find that the judge chose erroneously and would free defendant.

The cases relied upon by the majority are inapposite. All refer to a prosecutor's motion or a judge's *sua sponte* declaration of mistrial.

For instance, the majority quotes from *Gori v United States,* 367 US 364; 81 S Ct 1523; 6 L Ed 2d 901 (1961), but does not relate the essence of that decision.

In *Gori,* defendant was in the first day of a jury trial when the judge, *on his own motion,* declared a mistrial. Defendant was silent, neither objecting nor approving. The Supreme Court stated that reasons for the mistrial were unclear although the trial judge may have acted because of questioning by the prosecutor bringing out other crimes of defendant. The Court agreed with the Court of Appeals in characterizing the judge's action:

"In any event, it is obvious, as the Court of Appeals

concluded, that the judge 'was acting according to his convictions in protecting the rights of the accused.' 282 F2d, at 46. The court below did not hold the mistrial ruling erroneous or an abuse of discretion. It did find the prosecutor's conduct unexceptionable and the reason for the mistrial, therefore, not 'entirely clear'. It did say that 'the judge should have awaited a definite question which would have permitted a clear-cut ruling', and that, in failing to do so, he displayed an 'overzealousness' and acted 'too hastily'. *Id.,* at 46, 48."

*Gori, supra,* at 366.

The Court commented on the role of the trial judge in declaring a mistrial re Fifth Amendment concerns:

> *"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision,* the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.

* * *

> "It is also clear that 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served * * * ,' *Brock v North Carolina,* 344 US 424, 427 [73 S Ct 349; 97 L Ed 456, 459 (1953)] and that *we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion."* (Emphasis added.)

*Gori, supra,* at 368.

*Gori* states the better rule to follow under the instant facts which are distinguishable from those leading to the conclusion as to that defendant. Here codefendants are involved rather than a single defendant, and the codefendant made the motion for mistrial rather than the judge *sua*

*sponte.* Further, the rationale of *Gori* carries over
to the instant case: (1) The trial judge is best
situated to make a decision on whether a mistrial
is necessary to achieve the ends of justice. (2)
Although the mistrial was not "in the sole interest
of the defendant", Johnson, there were two defend-
ants and the codefendant was equally interested.
He demanded a mistrial, so the trial judge could
reasonably find that the ends of justice required a
mistrial. (3) Although reference to a polygraph
may not be reversible error in every case, the
judge's declaration of a mistrial would at least
appear to be the product of the trial judge's solici-
tude and in the sole interest of the defendants.

Moreover, the general underlying rationale for
defense of double jeopardy does not exist in the
instant case.

"The underlying idea, one that is deeply ingrained in
at least the Anglo-American system of jurisprudence, is
that the *State with all its resources and power should
not be allowed to make repeated attempts to convict* an
individual for an alleged offense, thereby subjecting him
to embarrassment, expense and ordeal and compelling
him to live in a continuing state of anxiety and insecu-
rity, as well as enhancing the possibility that even
though innocent he may be found guilty." (Emphasis
added.)

*Green v United States,* 355 US 184, 187–188; 78 S
Ct 221, 223; 2 L Ed 2d 199, 204 (1957).

"Judicial wisdom counsels against anticipating hypo-
thetical situations in which the discretion of the trial
judge may be abused and so call for the safeguard of
the Fifth Amendment—cases in which the defendant
would be harrassed by *successive, oppressive prosecu-
tions, or in which a judge exercises his authority to
help the prosecution, at a trial in which its case is*

*going badly, by affording it another, more favorable
opportunity to convict the accused."* (Emphasis added.)

*Gori, supra,* at 369.

In the instant case, the mistrial was declared on
motion of the codefendant, not the prosecutor.

In an effort to avoid reversal on appeal, the trial
judge in the instant case may have "bent over
backwards" on behalf of the defendants in declar-
ing a mistrial. However, careful judges are learn-
ing that they cannot be too careful—or can they?

Justice Frankfurter's comment in *Gori* at 369
applies equally to the majority opinion in the
instant case:

*"[W]e are unwilling, where it clearly appears that a
mistrial has been granted in the sole interest of the
defendant, to hold that its necessary consequence is to
bar all retrial.* It would hark back to the formalistic
artificialities of seventeenth century criminal procedure
so to confine our federal trial courts by compelling
them to navigate a narrow compass between Scylla and
Charybdis." (Emphasis added.)

In the recent case of *United States v Dinitz,* —
US —; 96 S Ct 1075; 47 L Ed 2d 267 (1976), defend-
ant was represented by several attorneys. The trial
judge excluded the attorney in charge of the trial
because of his repeated improper actions during
the opening statement. The judge set three alter-
natives for the defendant: (1) stay or recess pend-
ing Court of Appeals review on expulsion of the
attorney; (2) continuation of the trial with the
remaining attorneys, or (3) declaration of a mis-
trial so defendant could get new counsel. A re-
maining attorney moved for a mistrial after con-
sulting with defendant. It was not opposed by the
prosecutor and was granted by the judge.

Before the second trial, defendant unsuccessfully moved for dismissal of the indictment on double jeopardy grounds. His subsequent conviction was reversed by the Court of Appeals on double jeopardy grounds because defendant was given no choice but to ask for a mistrial. The Court of Appeals treated the case as a declaration of mistrial over defendant's objection, ignoring his request for mistrial. Therefore, it was said that double jeopardy barred the second trial because there was no manifest necessity.

The United States Supreme Court reversed, holding that defendant did request a mistrial.

The Court of Appeals had based its holding on a waiver theory, saying that when defendant requests a mistrial he waives his right to be tried by the first jury. Therefore, it was said that defendant did not voluntarily waive because the trial judge did not present enough alternatives—he was left with no choice other than mistrial.

The Supreme Court held that the waiver theory does not apply—defendant is always faced with a "Hobson's choice" in deciding whether to respond to judicial or prosecutorial error with a mistrial request. He must give up the first jury or continue in a trial which may contain error. The Court said that the inquiry should be *whether "defendant retains primary control over the course to be followed in the event of such error". Dinitz, supra,* at 431. (Emphasis added.)

*Dinitz* is not on "all fours" with the instant case, but the cases are similar because the complaining defendant's attorney in each case committed possible error during trial. In *Dinitz,* the judge took his action upon objection from the prosecutor and a resulting request for mistrial by defendant. In the instant case, the trial judge declared a mistrial at the request of the codefendant.

However, the basic theory of *Dinitz* applies equally to the instant appeal.

We must examine the circumstances surrounding the declaration of mistrial to discover whether defendant had primary control. Defendant's attorney asked the objectionable question, codefendant's attorney strongly objected and asked for a mistrial, and defendant's attorney essentially apologized, saying, "[a]ll I can say is I didn't realize it was improper" and, "I feel kind of small". The court, on these facts, could find that defendant consented to the mistrial. Defendant had interests similar to those of the objecting codefendant and he apologized for the problem caused by his own question. Considering these facts, defendant had control over the events and, in the absence of a specific objection or denial of error at the time, the trial court could properly determine that defendant joined with the codefendant in seeking a mistrial.

The majority opinion states that "defendant must therefore do something positively in order to indicate he or she is exercising that primary control". However, *Dinitz* contains no such language. The proper inquiry, simply stated, is whether defendant had primary control. A reviewing court may examine the totality of the circumstances in considering whether such control existed. The totality of the instant facts reveal control. Defendant need not raise a red flag.

Finally, we note comments by the United States Supreme Court concerning the result which Justice WILLIAM's opinion inevitably brings about:

"[It] * * * undermines rather than furthers the protections of the Double Jeopardy Clause. In the event of severely prejudicial error a defendant might well consider an immediate new trial a preferable alternative to the prospect of a probable conviction followed by an

appeal, a reversal of the conviction, and a later retrial. Yet the Court of Appeals' decision, in effect, instructs trial judges to reject the most meritorious mistrial motion in the absence of manifest necessity and to require, instead, that the trial proceed to its conclusion despite a legitimate claim of seriously prejudicial error. For if a trial judge follows that course, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is set aside by the trial judge or reversed on appeal. *United States v Ball,* 163 US 662." *Id.*

In this case, it also results in one codefendant convicted and another released after guilty pleas by each to identical offenses. Gamesmanship prevailed again.

I would affirm the conviction.

FITZGERALD, J., concurred with COLEMAN, J.