PEOPLE v. CARLTON BROWN

1. INDICTMENT AND INFORMATION—HOMICIDE—FIRST-DEGREE MURDER
   —OMISSION OF PREMEDITATION—SUFFICIENCY OF INFORMATION.

   Omission of the word premeditation from an information does
   not render it insufficient to charge first-degree murder where
   the information states that defendant feloniously, wilfully
   and with malice aforethought killed and murdered a named
   person contrary to the form of the statute and the only stat-
   ute cited in the information and in the arrest warrant is that
   of first-degree murder, since a defendant under those circum-
   stances could not possibly be misled into believing that he is
   being charged with a lesser offense than first-degree murder
   (CL 1948, § 750.316).

2. INDICTMENT AND INFORMATION—HOMICIDE—AMENDMENT—PROPRI-
   ETY.

   Propriety of the trial court's requiring or allowing the people
   to amend the crime charged in an information from second-
   degree to first-degree murder after trial had started is ques-
   tionable since amendment of an information after trial had
   begun so as to charge an accused with a different crime,
   punishable with a more severe penalty, is not permitted (CL
   1948, § 767.76).

3. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—JURY
   —DISCHARGE—SILENCE—WAIVER.

   Silence of a defendant on trial for a crime, or his failure
   to object or protest against an illegal discharge of the jury

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 228.
[2] 41 Am Jur 2d, Indictment and Information § 179 *et seq.*
  Power of court to make or permit amendment of indictment. 17
  ALR3d 1181.
[3, 4, 6] 21 Am Jur 2d, Criminal Law §§ 195, 207.
[5] 21 Am Jur 2d, Criminal Law § 174 *et seq.*

before verdict, does not constitute a consent to such discharge and therefore his conduct does not waive the constitutional inhibition against a subsequent trial for the same offense (US Const, Am 5; Mich Const 1963, art 1, § 15).

4. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—JURY —DISCHARGE—SILENCE—WAIVER.

Defendant's silence could not operate as his consent to, or acquiescence in, the trial court's dismissal, *sua sponte*, of the already impaneled and sworn jury where the record showed that defendant neither agreed nor dissented to.

5. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—JURY —DISCHARGE—ACQUITTAL.

Discharge of an impaneled and sworn jury without sufficient cause and without the defendant's consent, express or implied, operates as an acquittal of the defendant of the offense charged, in that another trial for the same offense is effectually barred.

6. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—JURY —DISCHARGE—CONSENT—WAIVER.

Defendant's silence at the trial court's dismissal, *sua sponte*, of the jury impaneled and sworn to hear defendant's trial for first-degree murder did not constitute a waiver of his constitutional right not to be twice placed in jeopardy for the same offense since defendant's consent to the jury discharge could, at best, only be implied and a waiver of a constitutional right requires an intentional relinquishment or abandonment of it.

Appeal from Wayne, George W. Crockett, Jr., J. Submitted Division 1 January 14, 1970, at Detroit. (Docket No. 8,127.) Decided April 29, 1970. Leave to appeal denied July 1, 1970. 383 Mich 800.

Carlton Brown was arraigned on a first-degree murder information. Defendant's motion to dismiss denied. Defendant appeals. Motion to dismiss granted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Gus Cifelli,* for defendant.

Before: Danhof, P. J., and Fitzgerald and Mc-Gregor, JJ.

McGregor, J. This case must be decided on the facts. The law is clear. Does the trial court's *sua sponte* discharge of a duly impaneled and sworn jury, on the third day of a murder trial of this defendant and others, preclude a second trial for the same offense under the constitutional provision prohibiting a person from being placed in jeopardy twice for the same offense, unless such action was with the consent or acquiescence of the defendant? See *People* v. *Anglin* (1967), 6 Mich App 666.

The pertinent but sometimes confusing facts are that, at approximately seven o'clock on the evening of December 22, 1966, this defendant, together with Harold Johnson and George Grimmett, bent upon robbery, entered the retail market of Shaker Aubrey, announced a holdup, and thereafter shot and killed him. The defendants were arrested and arraigned upon an arrest warrant which charged that they "feloniously, wilfully and of their malice aforethought did kill and murder one Shaker Aubrey, * * * contrary to the form of the statute, etc."* At the conclusion of the preliminary examination proofs, on January 6, 1967, the magistrate bound the three defendants over for trial on the first-degree murder charge. Thereafter, the defendants

---

* CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

were arraigned upon the information which charged them with first-degree murder, in language identical to that contained in the arrest warrant. A jury trial commenced on January 22, 1968, before the Honorable George W. Crockett, Jr., of the Recorder's Court of the City of Detroit.

In his opening statement to the jury, the prosecutor stated:

"It is the position of the people that this crime was premeditated in accordance with a preconceived plan. That it was executed in the course of a robbery which had been agreed upon between the three defendants * * * we intend to prove to you these facts beyond a reasonable doubt."

On the third day of the trial, the attorney for defendant Grimmett informed the court that his client desired to enter a plea of guilty of the offense of murder in the second degree, and it was contended by Grimmett's attorney that the language of the offense as then charged in the information was that of second-degree murder only. Following legal argument between Judge Crockett and some of counsel, the trial judge agreed with defendant Grimmett's attorney's contention and ruled that the information merely charged second-degree murder. The court informed the trial prosecutor that he would permit an amendment to the information to provide for premeditation. Defendant Grimmett's attorney maintained that the amendment would charge a more serious offense; in this he was joined by the attorney appearing on behalf of defendant Johnson, and both objected to the amendment. Counsel for this defendant remained silent and did not assent to the discharge of the jury. The trial judge, *sua sponte,* discharged the jury from further

consideration of the case, following the granting of the prosecutor's motion to amend the information.

On January 14, 1968, the three defendants were arraigned on an amended first-degree murder information and a new trial date was set. The denial of the defense motion to dismiss because of the former jeopardy of this defendant gives rise to this appeal.

The people in their brief have a pertinent paragraph:

"The cases of the *People* v. *Gologonoff* (1967), 6 Mich App 332 (leave to appeal denied by the Supreme Court October 12, 1967, 379 Mich 783), and the *People* v. *Dupuis* (1963), 371 Mich 395, as construed by the court  *  *  *  had much to do in persuading the court to conclude that the information in the case being tried did not charge the offense of first-degree murder. The court was of the opinion that the language framing the charge did not contain or allege premeditation. The court appeared to be uncertain as to whether or not he could charge the jury on first-degree murder as the information was then worded. He asked the prosecutor:

" '*The Court:* Do you think that under this indictment I can charge this jury on first-degree murder?

" '*Mr. Weiswasser:* Yes, your Honor. Especially if we amend the information and I can't see any reason why not.' "

In *Gologonoff, supra,* the question was whether the jury verdict "guilty in manner and form as the people have in their information in this cause charged" convicted the defendant of first-degree murder and complied with the statute, CL 1948, § 750.318 (Stat Ann 1954 Rev § 28.550), requiring the jury to ascertain in their verdict whether it be murder of the first or second degree. Our Court held that for such a general verdict to comply with

the statute and to convict the defendant of first-
degree murder, the information would have to con-
tain the word "premeditation." This Court did not
hold that the information in *Gologonoff, supra,* was
defective, nor that such information would not have
sustained a verdict of first-degree murder, provided
the jury in their verdict so determined. *Gologonoff*
had nothing to do with the sufficiency of the informa-
tion but dealt solely with the lack of specificity in
the jury verdict. The trial court's reliance on *Golog-
onoff* was totally misplaced.

The court's statement that the defendants might
have been misled by the information into believing
that the prosecution only intended to ask for convic-
tion of a charge of second-degree murder is not
borne out, as the only statute cited in the informa-
tion and the warrant is that of first-degree murder.

Furthermore, the propriety of the trial court's
requiring or allowing the people to amend an al-
leged murder charge from second-degree to first-
degree murder is highly questionable. See *People
v. Gibbons* (1932), 260 Mich 96, 99, where the court
held:

"While the statute, being part of code of criminal
procedure of 1927, was adopted to eliminate some
of the technicalities which have surrounded the prac-
tice of criminal law, *it does not permit the amend-
ment of an information after trial has been begun
so as to charge the accused with a different crime,
punishable with a more severe penalty.*" (Empha-
sis added.)

The information charged that the defendants

"* * * feloniously, wilfully and of their malice
aforethought, did kill and murder one Shaker Au-
brey contrary to the form of the statute in such
case made and provided, and against the peace and
dignity of the people of the State of Michigan."

This is the language on which this defendant was bound over for trial on a first-degree murder charge.

An information need not specify the degree of murder charged; it is sufficient if it charges that the defendant did murder the deceased. *Sneed* v. *People* (1878), 38 Mich 248, 251, 252; *People* v. *Page* (1917), 198 Mich 524, 535, 536; CL 1948, § 767.71 (Stat Ann 1954 Rev § 28.1011).

The information is not defective: the trial court erred in so concluding. An information is to apprise the defendant of the charges against him; an information which fulfills such requirement is a good and proper information. *People* v. *Kearns* (1965), 2 Mich App 60; *People* v. *Calvin* (1886), 60 Mich 113. Defendant was bound over on a charge of first-degree murder and it is clear that defendant himself was aware of that charge.

We are also confronted with the issue of whether this defendant consented or acquiesced in the dismissal of the jury. The transcript shows that defendant Grimmett's counsel made the original motion to allow his client to plead guilty of second-degree murder. Defendant Johnson's attorney is on record as agreeing with some points. At no point does the record show that counsel for this defendant said anything, either in agreement or dissent. Silence cannot operate against a defendant:

"In *Allen* v. *State* (1906), 52 Fla 1 (41 So 593), we held that the silence of the defendant on trial for a crime *or his failure to object* or protest against an illegal discharge of the jury before verdict does not constitute a consent to such discharge. Such conduct by the accused is not a waiver of the constitutional inhibition against a subsequent trial for the same offense after the improper discharge of the jury. See also, *State, ex rel. Dato,* v. *Himes* (1938), 134 Fla 675 (184 So 244); *State, ex rel. Alcala,*

v. *Grayson* (1945), 156 Fla 435 (23 So 2d 484).”
*State* v. *Grayson* (Fla, 1956), 90 So 2d 710 (63
ALR2d 777).

The prosecution contends that Grimmett’s counsel
led the trial judge to believe that all the defendants
were of the opinion that the jury should be dis-
charged, giving the defendants an opportunity to
meet the amended information at another trial.
The following remarks of Grimmett’s counsel are
important, including other excerpts of this involved
action:

“*Mr. Sherman* (*Sidney Sherman, appointed coun-
sel for defendant George Grimmett*): In the first
place, if the Court please, it is the contention of the
defendant, the various defendants, that the right to
be informed of the charge and that the charge
against them is a valid one.

\*     \*     \*

“I am not arguing the constitutionality of the
Michigan statutes. I call your attention to this. But,
your Honor, as to whether or not they have a right
to amend—
“*The Court* (*Interposing*): You can argue the
constitutionality of the Michigan statute. *I think
the Michigan statute is safe from constitutional de-
fect by the requirement—*
“*Mr. Sherman* (*Interposing*): *Yes, that’s right,
your Honor.*
“*The Court* (*Continuing*):—*that I discharge the
jury and give you an opportunity to meet the amend-
ment to the indictment and have another trial.*
“*Mr. Sherman: That’s right.*
“*Mr. Weiswasser* (*Assistant Prosecuting Attor-
ney*): Or to proceed with the trial.
“*Mr. Sherman:* May I say one word?
“*The Court:* You can’t proceed with the trial.
“*Mr. Sherman:* You have taken innumerable pleas
to lesser offenses where a count is added on the in-

formation. What is the first thing that is asked of the defendant? 'You waive the previous proceedings, the right to an examination, the right to arraignment on a new—on an information charging this added count?' So that they cannot amend it. They are amending it as to substance. *I agree with your Honor that the Michigan statutes—where we raise the question and they want to amend to substance, we have got to ha(v)e a new jury."* (Emphasis added.)

The trial judge apparently believed that the defendants were moving for a termination of the trial proceedings:

*"The Court:* Right, under the appropriate charge. But when the information is set forth as this one is, I am limited to the charge that I can give the jury, based on this information.

*"Mr. Weiswasser:* And we submit—

*"The Court (Interposing):* The information does not charge premeditation and therefore it is not first-degree murder in Michigan.

"I grant the defense motion.

"If you want to amend I will give you leave to amend.

*"Mr. Weiswasser:* We ask for leave to amend.

*"The Court:* In that case we will have to call the jury back and discharge the jury and refer it to the assignment clerk to set another date."

Following the granting of the defense motion to discharge the jury, the court permitted the prosecutor to move that the information be amended.

The record shows that some of the counsel may have been confused as to exactly what motions were presented to the court for consideration. Defense counsel for defendant Johnson addressed the court:

*"Mr. Hubbell (Stewart Hubbell, appointed counsel for defendant Harold Johnson):* Your Honor,

as I understand it, the new information will be filed and they will be arraigned again, is that right?

"*Mr. Weiswasser:* There would have to be an arraignment on the new information.

"*Mr. Sherman:* What I—my motion would be an objection to the amendment of the information to charge murder in the first degree.

"*Mr. Hubbell:* May I join in that?

"*The Court:* That motion is overruled.

"I am ruling that the information—

"*Mr. Sherman (Interposing):* No, no.

"*The Court:* I am ruling that the information is defective insofar as it says the charge is murder in the first degree. It does charge murder in the second degree.

"People have requested leave to amend to charge murder in the first degree. I am granting that motion to amend.

"Under the law I am required under those circumstances to give you an opportunity to meet the new charge.

"Whether or not that necessitates a new examination—I am inclined to think it does. The matter would have to be remanded for a new examination, and it is so ordered.

"*Mr. Sherman:* Thank you.

"*Mr. Hubbell:* Thank you.

"This is to all three defendants?

"*The Court:* This is as to all three defendants. Bring in the jury."

From these exchanges, coupled with the lack of any objections to the decisions of the court, the prosecution contends that it is permissible to infer that this defendant acquiesced in the rulings of the court.

The only motion presented by any of the defendants was the original motion to allow defendant Grimmett to plead guilty to a charge of second-degree murder. When the court granted the motion,

it was obviously not the original guilty plea motion. The only logical interpretation is that the trial court thought it was granting a motion to dismiss the jury. This motion or idea was originated by the trial court, although Grimmett's attorney apparently agreed. The trial court stated that his rulings applied to all three defendants.

"After a jury has been impaneled and sworn, any discharge thereof without sufficient cause operates as an acquittal, in that it effectually bars another trial for the same offense. But to have this operation and effect such discharge must have been made without the consent, express or implied, of the respondent: *Joy* v. *State* (1860), 14 Ind 139; *Stewart* v. *State* (1864) 15 Ohio St 155; *State* v. *Garvey* (1875), 42 Conn 232; *Spencer* v. *State* (1854), 15 Ga 562; *Rex* v. *Stokes* (1833), 6 Car & P 151; *State* v. *M'Kee* (1830), 1 Bailey 651; *Commonwealth* v. *Sholes* (1866), 13 Allen 554, 1 Bish Crim Law, § 998, and cases cited in notes 4 and 5, and note 1 p. 600." *People* v. *Gardner* (1886), 62 Mich 307, 311.

A consent to the discharge of the jury by this defendant Brown in the instant case can, at best, only be implied. A strong presumption is raised against a waiver of fundamental rights by an accused. A waiver involves intentional relinquishment or abandonment of a known right or privilege.

In this case, an implication of waiver of such a right is impossible to justify. While the trial arguments are confusing, to say that silence on the part of this defendant waived his right not to be twice placed in jeopardy would deny him a fundamental right. This determination does not necessarily apply to the other defendants.

Double jeopardy is prohibited by the fifth amendment to the United States Constitution, and by Art I, § 15 of the Michigan Constitution of 1963. Jeop-

ardy is defined in *Recorder's Court Presiding Judge v. Third Judicial Circuit Judge* (1954), 340 Mich 193, 201:

"In *People* v. *Powers* (1935), 272 Mich 303, 307, this Court recognized the general rule that one accused of violating the law is in jeopardy when placed on trial, on such charge, in a court of competent jurisdiction. Among other decisions of this Court involving a claim of double jeopardy are: *Preston* v. *People* (1881), 45 Mich 486; *People* v. *Kuhn* (1891), 67 Mich 463; *People* v. *Townsend* (1921), 214 Mich 267 (16 ALR 902)."

From the facts, we find that the attempt to try this defendant on another murder charge puts him in double jeopardy. This defendant's motion to dismiss should have been granted.

Dismissed.

All Concurred.