PEOPLE v. HOFFMAN

1. CRIMINAL LAW—HOMICIDE—INSANITY DEFENSE—EVIDENCE.

A jury's finding of sanity was adequately supported by the evidence where two psychiatrists testified for the prosecution at a murder trial and both were of the opinion that defendant was sane when his ex-wife was shot and killed.

2. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—DISCRETION.

Admission in evidence in a murder trial of two color slides which depicted the nearly naked corpse of the deceased lying on an autopsy table was within the sound discretion of the trial court where the slides were neither of great probative value, nor were they inflammatory, and except for several minute bullet punctures, the corpse was in a natural state, as yet untouched by the probing tools of the pathologist.

Appeal from Ingham, Louis E. Coash, J. Submitted Division 2 November 6, 1969, at Lansing. (Docket No. 3,883.) Decided June 1, 1970. Leave to appeal denied August 20, 1970. 383 Mich 820.

Robert R. Hoffman was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*Jerrold H. Keyworth,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 50, 52, 53.
[2] 29 Am Jur 2d, Evidence §§ 787, 790, 792, 798.

Before: J. H. GILLIS, P. J., and McGREGOR and
V. J. BRENNAN, JJ.

PER CURIAM. Donna Pearl Hoffman was shot and
killed in front of her home in Lansing in the evening
of October 28, 1963. Charged with the killing,
her ex-husband, the defendant here, pleaded not
guilty and not guilty by reason of insanity. Trial
before a jury resulted in a verdict of guilty of
murder in the first degree. The defendant appeals
as of right.

Only two of the defendant's numerous assign-
ments of error merit any discussion. The others
are either not properly before this Court or are
frivolous.

The defendant contends the prosecution failed
to prove beyond a reasonable doubt that he was
legally sane at the time of the shooting. This con-
tention is unfounded. Two psychiatrists, Drs.
Stimson and Phillips, testified for the prosecution
and both were of the opinion that the defendant was
sane when the shooting occurred. Dr. Stimson tes-
tified in part:

"*A.* I felt that at the time that I examined Mr.
Hoffman that he was not suffering from a mental
illness of either a psychotic nor a psychoneurotic
nature which would in any way affect his ability
to determine right or wrong.

"*Q.* (*By the prosecutor*): Can you tell the jury
what, if anything, is wrong with Mr. Hoffman as
contradistinguished from mental illness.

\*     \*     \*

"*A.* It was my opinion that at the date of examina-
tion I would have classified Mr. Hoffman under the
personality trait disturbances as a passive-aggres-
sive personality type.

"*Q.* And how is this category of personality distinguished from a person who is mentally ill?

"*A.* This type of disorder is categorized as being one of a defect in the development of character or defect in the development of personality, whereas the psychoneurosis and the psychoses represent more of a regression or return back to an earlier level or form of behavior.

"*Q.* Primitive, if you know?

"*A.* More primitive, yes, sir, more primitive.

"*Q.* Doctor, directing your attention back again now to the categories of mental illness and mental disease that I tried to elicit from you in the first part of the questioning, you stated now that this problem that Mr. Hoffman had was really a personality problem and not a mental illness.    *    *    *

"*Q.* Having had the benefit of your examination of him on April 11, and opportunity to review records, and opportunity to see him, and opportunity to read his statement, and an opportunity to review the records of Dr. Asselin, are you able to give your opinion as to whether or not in October and particularly the night of October 28th, Mr. Hoffman was suffering from any mental disease?

"*A.* I saw nothing in the statement or in the medical record there that would be incompatible with my opinion as of the date of April 11, 1964.

*    *    *

"*Q.* (*After relating the events of October 28, 1963*): Were these acts, Doctor, the carrying out of a compulsion over which he had no control?

"*A.* I would say no.

*    *    *

"*Q.* From the facts as I have explained them or related them to you, with all the facts that you have at your disposal in this case, the information that you have, the result of your experience and your observations of this man at the time you examined him and as you view him here in the courtroom today, if in fact he shot and killed his wife in

the fashion as we have described, in your opinion did he know right from wrong at the time he killed her?

"*A.* Yes sir."

Dr. Phillips corroborated Dr. Stimson:

"*Q.* Doctor, directing your attention to what you believe to have been the facts that occurred on the night of October 28th, 1963, that which you learned both by reading the reports, by talking with Mr. Hoffman, by hearing the evidence which has been brought in in this case, drawing upon your own 48 years experience as a psychiatrist and doctor, your conversations you had with Mr. Hoffman while he was a business invitee in your home, are you able to tell us whether or not, in your opinion, this man is or was, in February of 1964, or in October of 1962, and on October 28th, of 1963, suffering from a mental disease?

"*A.* I don't think so; no.

"*Q.* Drawing upon your same experience and knowledge, are you able to state an opinion as to whether or not, on the 28th day of October, 1963, at the time Mr. Hoffman shot and killed his wife, whether or not he knew the difference between that which is right and that which is wrong?

"*A.* He certainly did.   *   *   *

"*Q.* (*By Mr. Farhat*):  Did Mr. Hoffman, in your opinion, on night of October 28th, 1963, know the difference between right and wrong?

"*A.* I think so; yes.

*   *   *

"*Q.* Did he have the ability at that time to adhere to that which is right?

"*A.* Yes."

Opposed to this testimony was the testimony of a defense psychiatrist that the defendant was indeed insane.  Although the jury was free to accept the opinions of the defense psychiatrist and reject those

of the prosecution, they chose not to do so. The jury's finding of sanity is adequately supported by the evidence.

Offered in evidence over the objection of the defense were two color transparencies, or slides, depicting the nearly naked corpse of the deceased lying on the autopsy table. Their probative value was admittedly limited to being but a visual aid to the testifying pathologist in explaining the course taken by the bullets. The defendant contends that the slides were gruesome and inflammatory, that their prejudicial effect clearly outweighs their probative value, and that their admission was therefore reversible error. See *People* v. *Turner* (1969), 17 Mich App 123.

We find no error in their admission. Although the slides were not of great probative value, neither were they inflammatory. Except for the several minute bullet punctures in the abdomen and lower right arm, the corpse was in a natural state, yet untouched by the probing tools of the pathologist (see *People* v. *Turner, supra*), and both the face and genitalia were shrouded. Admission of the slides in evidence was within the sound discretion of the trial court. *People* v. *Eddington* (1970), 23 Mich App 210.

Affirmed.