PEOPLE v HOFFMAN

Opinion of the Court

1. Constitutional Law—Trial—Jury—Discharge—Acquittal—
Consent—Express—Implied.

Any discharge of a jury, after it has been impaneled and sworn,
without sufficient cause operates as an acquittal in that it
effectually bars another trial for the same offense; such dis-
charge must have been made without the consent, express or
implied, of the respondent in order to operate as an acquittal
and bar another trial.

2. Constitutional Law—Criminal Law—Double Jeopardy—Jury—
Discharge—Silence—Waiver.

A defendant's silence could not operate as his consent to, or
acquiescence in, a trial court's dismissal of an impaneled and
sworn jury where the record shows that defendant neither
agreed nor dissented to the jury's dismissal; the courts have,
nonetheless, found consent if it was expressed by defendant's
counsel.

3. Constitutional Law—Mistrials—Consent—Double Jeopardy—
Defendant's Personal Consent—Defendant's Primary Con-
trol.

Case precedent requires an express manifestation of consent to a
mistrial either from the defendant or from his attorney to
effectively eliminate the bar of double jeopardy where a mis-
trial is sought after a jury is impaneled and sworn; the absence
of the defendant's personal consent to a mistrial where the

References for Points in Headnotes

[1, 6] 21 Am Jur 2d, Criminal Law §§ 194, 195.
    76 Am Jur 2d, Trial § 1089.
    What constitutes accused consent to court to discharge of jury or to
        grant of state's motion for mistrial which will constitute waiver
        of former jeopardy plea. 63 ALR2d 782.
[2, 3, 6] 21 Am Jur 2d, Criminal Law §§ 194–196, 198, 204.
[4] 16 Am Jur 2d, Constitutional Law §§ 58–100, 221.
[5, 6] 21 Am Jur 2d, Criminal Law §§ 165, 166, 209, 476.

record shows a consent by counsel does not necessarily bespeak the absence of his primary control over the proceedings.

4. CONSTITUTIONAL LAW—COURTS—INTERPRETATIONS.

The fealty of the Court of Appeals is to the United States Supreme Court in matters of Federal constitutional interpretation.

CONCURRENCE BY R. M. MAHER, J.

5. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—FUNDAMENTAL RIGHTS—WAIVER.

*The guarantee against double jeopardy is a fundamental right which can be waived only by the defendant himself.*

6. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—DEFENDANT'S PRIMARY CONTROL—MISTRIALS—WAIVER—RECORD—PERSONAL MANIFESTATION.

*A defendant must do something positively in order to indicate that he is exercising primary control over the course to be followed and consents to a mistrial where such consent operates as a waiver of the protection against double jeopardy; primary control must reside in the defendant himself or personally; the record must disclose a personal manifestation by defendant that he consents to a waiver; it is not necessary that the record contain a statement by the defendant but it must be demonstrated that counsel has at least spoken with his client about the constitutional protection and after such discussion defendant has made the decision to consent.*

Appeal from Ingham, Louis E. Coash, J. Submitted October 4, 1977, at Lansing. (Docket No. 30262.) Decided February 7, 1978. Leave to appeal applied for.

Robert R. Hoffman was convicted of first-degree murder. Defendant appealed. Affirmed, 24 Mich App 244 (1970). Defendant applied for leave to appeal to the Supreme Court. Application denied, 383 Mich 820 (1970). Defendant filed a complaint for habeas corpus which the Court of Appeals treated as an application for delayed appeal and granted leave to appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Lee Wm. Atkinson,* Chief Appellate Attorney, for the people.

*Paul E. Lincolnhol,* for defendant on appeal.

Before: D. C. RILEY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

D. C. RILEY, P. J. Defendant appeals, by leave granted, his 1964 conviction of first-degree murder and corresponding sentence of life imprisonment. We affirm.

I

Charged with murdering his ex-wife, defendant first came to trial in February, 1964. During the trial, the court, for reasons unexplained by the present record, excluded a Reverend Schuurmans as a defense witness. Later, during defense examination of witness Geraldine Wilson, defendant's sister, Reverend Schuurmans became the subject of discussion:

"Q. *[MR. KEYWORTH, DEFENSE ATTORNEY]* Now, you say you talked with other people. Did you and any other member of your family make an effort to get outside help other than the ones that we have discussed here?
"A. Yes, we did.
"Q. And where did you try to seek help?
"A. I went to Reverend Schuurmans and he went to the Prosecutor's office."

At that point the prosecutor objected, sought and secured the jury's removal, and then requested a mistrial "based on the actions of this

witness in injecting evidence that is absolutely immaterial, irrelevant, and incompetent, and which has been formally excluded by this court in her presence, and I ask that she be cited for contempt".

While defendant's other attorney, Benjamin Watson, originally seemed to resist the motion for mistrial, his views changed following an in-chambers conference[1] with the trial judge:

"THE COURT: All right. I understand you have something to say, Mr. Watson?

"MR. WATSON: I did tell the court informally in chambers that we would not oppose the Prosecutor's motion, and indeed would concur in it.

"We deplore the incident that led to the making of the motion. We do not think it is as serious as Mr. Farhat [the prosecuting attorney] seems to think. But if he feels the way he does about it, why, we would not challenge his right to make the motion and we would concur in it.

"THE COURT: Do you have anything to say at this time, Mr. Farhat?

"MR. FARHAT: No.

"THE COURT: All right. Inasmuch as both sides have made a motion for a mistrial, the court is going to grant it."

Upon the jury's return to the courtroom, the judge informed them of his ruling:

"THE COURT: Ladies and gentlemen of the jury: You were asked to leave the courtroom just a few minutes ago before this court took a recess, or asked you to leave.

"During your absence a motion was made by the Prosecuting Attorney that the court declare a mistrial in this case. A mistrial means that the case is ended.

---

[1] The record does not reveal whether defendant, the prosecutor or attorney Keyworth were present during the in-chambers conference.

*"That motion was concurred in by Mr. Watson and Mr. Keyworth, the attorneys for the defendant,* and the motion was granted."

Later retried and convicted, defendant unsuccessfully pursued appellate relief. *People v Hoffman,* 24 Mich App 244; 180 NW2d 99 (1970), *lv den,* 383 Mich 820 (1970).

On January 14, 1977, a panel of this Court, in response to defendant's complaint for habeas corpus, treated the matter as an application for delayed appeal and granted same.

## II

Defendant's renewed attack on his conviction relies entirely on the double jeopardy clauses of the state and Federal constitutions.[2] Const 1963, art 1, § 15 and US Const, Am V. Citing *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976), and *People v Gardner,* 37 Mich App 520; 195 NW2d 62 (1972), he argues initially that manifest necessity did not require the trial court's declaration of a mistrial. We agree. The error, if any, in witness Wilson's isolated comment regarding Reverend Schuurmans' visit to the prosecutor —a non-responsive answer to a proper question by defense counsel—could have been cured by a cautionary instruction. See *People v Kelsey,* 303 Mich 715, 717; 7 NW2d 120 (1942). If a single reference to a polygraph test does not compel the granting of a mistrial, *Alvin Johnson, supra,* at 437, witness

[2] "The scope of the law of jeopardy is apparently the same under both the Michigan and United States Constitutions. *In re Ascher,* 130 Mich 540, 545; 90 NW 418; 57 LRA 806 (1902)." *People v Alvin Johnson,* 396 Mich 424, 430, fn 2; 240 NW2d 729 (1976). United States Supreme Court interpretations of the Federal double-jeopardy clause are binding upon the states. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), *Alvin Johnson, supra,* p 430, fn 1.

Wilson's brief remark clearly did not merit such
drastic action.

## III

Defendant also maintains that *Alvin Johnson,*
*supra,* requires a showing either that defendant
*personally* consented to the mistrial or that he
exerted primary control in the decision to accede
to the prosecutor's mistrial motion. Claiming that
the record satisfies neither requirement, he seeks
release from confinement on grounds of double
jeopardy.

*Alvin Johnson,* a case where neither defendant
nor his counsel requested or consented to a mis-
trial, ostensively derived its holding from *United*
*States v Dinitz,* 424 US 600; 96 S Ct 1075; 47 L Ed
2d 267 (1976).

In *Dinitz,* three attorneys, Messrs. Wagner, Mel-
don and Baldwin, represented defendant. During
the opening statement (conducted by Wagner), the
trial court ejected Wagner from the courtroom for
obstreperous conduct, but allowed defendant's
other counsel to remain.

"The next morning, Meldon told the judge that the
respondent wanted Wagner and not himself or Baldwin
to try the case. The judge then set forth three alterna-
tive courses that might be followed—(1) a stay or recess
pending application to the Court of Appeals to review
the propriety of expelling Wagner, (2) continuation of
the trial with Meldon and Baldwin as counsel, or (3) a
declaration of a mistrial which would permit the re-
spondent to obtain other counsel. Following a short
recess, Meldon moved for a mistrial, stating that, after
'full consideration of the situation and an explanation
of the alternatives before him, [the respondent] feels
that he would move for a mistrial and that this would
be in his best interest.' * * * The Government prosecu-

tor did not oppose the motion. The judge thereupon declared a mistrial, expressing his belief that such a course would serve the interest of justice." 424 US at 604–605; 96 S Ct at 1078; 47 L Ed 2d at 272.

In reversing the Fifth Circuit Court of Appeals, which had accepted Dinitz's double jeopardy claims, the Supreme Court observed:

"The Court of Appeals viewed the doctrine that permits a retrial following a mistrial sought by the defendant as resting on a waiver theory. The court concluded, therefore, that 'something more substantial than a Hobson's choice' is required before a defendant can 'be said to have relinquished voluntarily his right to proceed before the first jury.' See 492 F2d, at 59. The court thus held that no waiver could be imputed to the respondent because the trial judge's action in excluding Wagner left the respondent with 'no choice but to move for or accept a mistrial.' *Ibid.* But *traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error.* See *United States v Jorn,* 400 US 470, 484–485, n 11; [91 S Ct 547; 27 L Ed 2d 543 (1971)], *United States v Jamison,* 164 US App DC 300, 305–306; 505 F2d 407, 412–413 (1974). In such circumstances, the defendant generally does face a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error. *The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.*[11]

" 11. The respondent characterizes a defendant's mistrial motion as a waiver of 'his right not to be placed twice in jeopardy' and argues that to be valid the waiver must meet the knowing, intelligent, and voluntary standard set forth in *Johnson v Zerbst,* 304 US 458; [58 S Ct 1019; 82 L Ed 1461; 146 ALR 357 (1938)]. This approach erro-

neously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right. *See Breed v Jones* 421 US 519, 534; [95 S Ct 1779; 44 L Ed 2d 346 (1975)], *United States v Wilson,* 420 US 332, 343–344, n 11; [95 S Ct 1013; 43 L Ed 2d 232 (1975)], *United States v Jorn,* 400 US 470, 484–485, n 11; [91 S Ct 547; 27 L Ed 2d 543 (1971)] (plurality opinion), *United States v Tateo,* 377 US 463, 466 [84 S Ct 1587; 12 L Ed 2d 448 (1964)]."

424 US at 608–610; 96 S Ct at 1080–1081; 47 L Ed 2d at 274–275. (Footnote 10 omitted; emphasis supplied.)

The *Alvin Johnson* Court, in apparent obeisance to the rule espoused in *Dinitz, supra,* opined:

"[E]ven where the mistrial was improperly declared, it is not a bar to retrial if the action was taken with defendant's consent. *State v Fenton,* 19 Ariz App 274, 276; 506 P2d 665, 667 (1973).

"Mere silence or failure to object to the jury's discharge is not such consent, 19 Ariz App 274, 276; 506 P2d 665, 667.[7]

---

" [7] *Accord, Commonwealth v Baker,* 413 Pa 105, 115; 196 A2d 382, 387 (1964); *Curry v Superior Court,* 2 Cal 3d 707, 713; 87 Cal Rptr 361, 364; 470 P2d 345, 348 (1970).

"*See also, People v Carlton Brown,* 23 Mich App 528, 534; 179 NW2d 58 (1970).

" 'Silence cannot operate against a defendant.'

"*Contra, Coppage v State,* 62 Okla Cr 325, 335; 71 P2d 509, 513 (1937).

---

"In a very recent case in which defense counsel himself requested a mistrial, the United States Supreme Court has addressed this point as follows:

'The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed * * * ', *United States v Dinitz*, 424 US 600, 609; 96 S Ct 1075, 1081; 47 L Ed 2d 267, 275 (1976), and the defendant must therefore do something positively in order to indicate he or she is exercising that primary control. Further,

" 'The circumstance that it is defense counsel who initiates the court's inquiry into a matter which ultimately results in an order of mistrial does not ipso facto transform counsel's expression of concern into an implied consent to such drastic ruling.' *People v Compton*, 6 Cal 3d 55, 62; 98 Cal Rptr 217, 221; 490 P2d 537, 541 (1971).

" '[A]n appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision' *United States v Jorn*, 400 US 470, 483; 91 S Ct 547; 27 L Ed 2d 543 (1971). Thus, in the absence of bright-line rules deliberately eschewed by the United States Supreme Court, 400 US 470, 486, we must first look to whether in the exercise of that control of the course of his own trial, highlighted by *Dinitz*, defendant Alvin Johnson approved termination of the proceedings.

"It is not difficult to require a trial court to inquire whether defendant consents. Therefore, in the absence of an affirmative showing on the record, this Court will not presume to find such consent.

"There was no such affirmative showing in this case. At best, *defense counsel* may be said to have been silent. At worst, *he* did not protest, but *he* did not assent. *Therefore,* we find that defendant did not personally consent to the end of the first trial." 396 Mich at 432–433 (Emphasis added.)

The foregoing extract from *Alvin Johnson* is susceptible of two, very different interpretations, one of which doubtless accords with defendant's

contention on appeal. To require, however, that "the defendant must * * * do something positively in order to indicate he or she is exercising * * * primary control" over the proceedings is to disregard settled precedent:

"After a jury has been impaneled and sworn, any discharge thereof without sufficient cause operates as an acquittal, in that it effectually bars another trial for the same offense. But to have this operation and effect such discharge must have been made without the consent, express *or implied,* of the respondent." *People v Gardner,* 62 Mich 307, 311; 29 NW 19 (1886). (Emphasis added.)

Similarly, see *People v White,* 68 Mich 648, 654; 37 NW 34 (1888). Indeed, *People v Carlton Brown,* 23 Mich App 528, 534; 179 NW2d 58 (1970), quoted approvingly, if selectively, in *Alvin Johnson,* appears to dispute defendant's double-jeopardy analysis:

"We are also confronted with the issue of whether this defendant *[i.e.,* Carlton Brown] consented or *acquiesced* in the dismissal of the jury. The transcript shows that defendant Grimmett's counsel made the original motion to allow his client to plead guilty of second-degree murder. Defendant Johnson's attorney is on record as agreeing with some points. At no point does the record show that *counsel for this defendant [i.e.,* Carlton Brown] said anything, either in agreement or dissent. Silence cannot operate against a defendant." 23 Mich App at 534. (Emphasis added.)

Moreover, the decisions cited in *Alvin Johnson* to show that mere silence cannot be equated with defendant's consent would appear nonetheless to find such consent if expressed by counsel. See, *e.g., Commonwealth v Baker,* 413 Pa 105, 115; 196 A2d 382, 387 (1964) ("[M]ere silence by defendant *or his*

*counsel* to the proposed discharge * * * will not amount to a waiver [of double jeopardy]" [emphasis added]) and *Curry v Superior Court,* 2 Cal 3d 707, 713; 87 Cal Rptr 361, 364; 470 P2d 345, 348 (1970) ("[a]t no time did petitioners, in person *or through counsel,* expressly consent to the granting of the mistrial" [emphasis added]). In addition, these decisions speak in terms of "waiver" of the double-jeopardy protections—an interpretation subsequently disapproved in *Dinitz, supra,* at 609–610, fn 11. See also *Alvin Johnson,* 396 Mich at 431, fn 4.[3]

In light of our recognition that neither defendant nor counsel in *Alvin Johnson* expressly assented to the mistrial, we interpret the ambiguous language of that case to require an express manifestation of consent either from defendant or from his attorney. Thus, since defendant Hoffman's two attorneys concurred in the prosecution's motion for mistrial, their actions on defendant's behalf effectively eliminated the bar of double jeopardy.[4]

To the extent this holding is interpreted as misreading *Alvin Johnson* and thereby disregarding our role in the judicial hierarchy and the rule of stare decisis, we note that in matters of Federal constitutional interpretation our fealty is to the United States Supreme Court. See *People v Martin,* 78 Mich App 518; 260 NW2d 869 (1977).

Although we, of course, encourage trial courts to

---

[3] In *People v Cooper,* 398 Mich 450, 455; 247 NW2d 866 (1976), the Supreme Court, despite its prior recognition that " 'the permissibility of a retrial following a mistrial' [no longer] depends on waiver", *Alvin Johnson, supra,* at 431, fn 4, nevertheless perpetuated a mistaken, "waiver" analysis to permit appellate consideration of a double-jeopardy claim.

[4] This author acknowledges the position taken in *People v Flansburgh,* 71 Mich App 1, 7, fn 2; 246 NW2d 360 (1976). To the extent it fails to discern the misapplication of *Dinitz* that occurred in *Alvin Johnson,* the *Flansburgh* footnote no longer reflects this writer's views.

elicit a defendant's express consent to a mistrial,[5] we do not believe that the absence of defendant's *personal* consent necessarily bespeaks the absence of his primary control over the proceedings.[6]

Affirmed.

J. H. GILLIS, J., concurred.

R. M. MAHER, J. *(concurring).* I agree with the result reached by the majority in this case but cannot agree with the analysis by which it reaches that result. The majority's attack on *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976), the Michigan case which construes *United States v Dinitz,* 424 US 600; 96 S Ct 1075; 47 L Ed 2d 267 (1976), is unwarranted.

I believe *Alvin Johnson* correctly interprets *Dinitz* to require something more than a defendant's attorney's acquiescence to a waiver of double jeopardy. *Dinitz* states,

"The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain

[5] "While it may not be difficult to inquire [whether defendant consents to a mistrial], the unanswered question [in *Alvin Johnson*] is why the double jeopardy clause, as a matter of constitutional law, should require such a procedure." Grano, *1976 Annual Survey of Michigan Law: Criminal Procedure,* 23 Wayne L Rev 517, 589 (1977).

[6] The recently released *People v Benton,* 402 Mich 47, 55; 260 NW2d 77 (1977), (Opinion of LEVIN, J.), in no way disparages the present holding: "In the instant case, there is no indication that Benton *or his counsel* consented to a mistrial and there is substantial evidence that his counsel objected." (Emphasis added.) Indeed, the cases there cited for the proposition that "[d]efendant's silence or failure to object to a declaration of mistrial does not constitute the requisite affirmative showing on the record", *Id.* at fn 6, appears to support our resolution. *See especially, People v Grimmett,* 388 Mich 590, 601, fn 6; 202 NW2d 278 (1972). Moreover, we have no doubt that Justices FITZGERALD, COLEMAN and RYAN, employing a totality-of-the-circumstances test, *People v Alvin Johnson,* 396 Mich 424, 451; 240 NW2d 729 (1976) (COLEMAN, J., *dissenting),* would find primary control on the present record.

primary control over the course to be followed in the event of such error." 424 US at 609.

*Alvin Johnson,* interpreting that language, holds:

"[T]he defendant must therefore do something positively in order to indicate he or she is exercising that primary control." 396 Mich at 432–433.

The guarantee against double jeopardy is a fundamental right. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), *People v Cooper,* 398 Mich 450; 247 NW2d 866 (1976). As *Alvin Johnson* correctly observed, it is a right which defendant himself or herself must waive.

Arguably, the "knowing, voluntary and intelligent" waiver concept is not applicable in Michigan because of the footnote in *Dinitz* which states that the Supreme Court rejects the concept. I can only note, however, that after *Dinitz* and after *Alvin Johnson,* our Supreme Court, in *People v Cooper, supra,* chose to use a waiver analysis to permit appellate consideration of a double jeopardy claim. The majority calls this analysis mistaken because of the *Dinitz* footnote. But it may also be viewed as a reflection of Michigan law in an area in which that law is beginning to vary from its Federal counterpart. Such action by our Supreme Court is not without precedent. See, for example, *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975).

But whether the analysis be traditional waiver or not, *Alvin Johnson* and *Dinitz* do require that defendant have primary control over the course to be followed. I believe that primary control must reside in the defendant himself or herself, or, as *Alvin Johnson* says, personally. The record must disclose a personal manifestation by defendant

that she or he consents to a waiver of the protection against double jeopardy. It is not necessary, though it is commendable, that the record contain a statement by the defendant; but it must be demonstrated that counsel has at least spoken with his or her client about the constitutional protection and that after such discussion defendant has made the decision to consent.

The passages quoted at length by the majority are equally supportive of our respective positions. Only the supplied emphasis is different.[1] Indeed, that *Alvin Johnson* uses the term "defense counsel" is not inconsistent with the view that a de-

---

[1] To demonstrate that a change in supplied emphasis sustains an interpretation contrary to that urged by the majority, consider the following:

"In a very recent case in which defense counsel himself requested a mistrial, the United States Supreme Court has addressed this point as follows:

" 'The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed * * * ', *United States v Dinitz,* 424 US 600, 609; 96 S Ct 1075, 1081; 47 L Ed 2d 267, 275 (1976), *and the defendant must therefore do something positively in order to indicate he or she is exercising that primary control.* Further,

" 'The circumstance that it is defense counsel who initiates the court's inquiry into a matter which ultimately results in an order of mistrial does not ipso facto transform counsel's expression of concern into an implied consent to such drastic ruling.' *People v Compton,* 6 Cal 3d 55, 62; 98 Cal Rptr 217, 221; 490 P2d 537, 541 (1971).

" '[A]n appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision', *United States v Jorn,* 400 US 470, 483; 91 S Ct 547; 27 L Ed 2d 543 (1971). Thus, in the absence of bright-line rules deliberately eschewed by the United States Supreme Court, 400 US 470, 486, *we must first look to whether in the exercise of that control of the course of his own trial, highlighted by Dinitz, defendant Alvin Johnson approved termination of the proceedings.*

"It is not difficult to require a trial court to inquire whether defendant consents. Therefore, in the absence of an affirmative showing on the record, this Court will not presume to find such consent.

"There was no such affirmative showing in this case. At best, defense counsel may be said to have been silent. At worst, he did not protest, but he did not assent. Therefore, we find that defendant *did not personally consent* to the end of the first trial. However, the finding of manifest necessity would still make the second trial permissible." 396 Mich at 432–433. (Emphasis supplied.)

fendant's attorney can, in a sense, waive a defendant's right, as long as counsel affirmatively indicates on the record that the defendant has had the primary control in the double jeopardy decision.

The majority's references to "settled precedent," *i.e.,* its references to *People v Gardner,* 62 Mich 307; 29 NW 19 (1886), *People v White,* 68 Mich 648; 37 NW 34 (1888), *People v Carlton Brown,* 23 Mich App 528; 179 NW2d 58 (1970), I find both unenlightening and unpersuasive.

*Alvin Johnson* represents a discernible modification of prior case law. "Settled precedent" is, therefore, of limited value. Even so, I do not agree that *Alvin Johnson* disregards settled precedent. The majority quotes *People v Gardner, supra,* on this point. *Gardner* states:

"But to have this operation and effect such discharge must have been made without the consent, express *or implied,* of the respondent." 62 Mich at 311. (Emphasis supplied by majority.)

*Alvin Johnson,* rather than disregarding the *Gardner* language, actually expands upon the concept of "implied" used there, by requiring that an implied consent, *i.e.,* one made by counsel for his or her client, be the result of a procedure in which defendant had primary control. The only effective way to ensure that defendant has primary control is for defendant himself or herself to consent on the record or for defendant's counsel to establish on the record that the decision to consent was the outcome of a process over which defendant had primary control.

From the record in this case I am led to believe, assuming but not deciding the retroactivity of *Alvin Johnson,* that defendant had the requisite primary control. Accordingly, I concur.