**Donte Shontel PRYOR, Petitioner,**

v.

**Barbara BOCK,[1] Respondent.**

No. 01–72204.

United States District Court,
E.D. Michigan,
Southern Division.

April 3, 2003.

---

**1.** Petitioner is now a resident of Saginaw Correctional Facility. Barbara Bock is the Warden. Therefore, she is substituted as Defendant. *See* Rule 2(a), Rules Governing Section 2254 cases in the United States District Court.

Donte Pryor, Freeland, MI, pro se.

Craig A. Daly, Detroit, MI, for petitioner.

Jerrold E. Schrotenboer, Jackson County Prosecutor's Office, Jackson, MI, for respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

TARNOW, District Judge.

#### I. Introduction

Petitioner Donte Shontel Pryor, through his attorney, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, pursuant to convic-

tions for assault with intent to commit murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony. He contends that his trial violated the Double Jeopardy Clause. Because the Court concludes that the Double Jeopardy Clause was not violated, the Court denies the petition.

#### II. Facts

Petitioner's conviction arises out of the non-fatal shooting of Raymond Weaver outside his home on April 2, 1997, in Jackson, Michigan. Mr. Weaver testified that, on that date, he was standing on the sidewalk outside his house with his friend Joseph Jewel when a car full of men drove by and started shouting at him. He identified Petitioner as one of the individuals in the car. Mr. Weaver went into his house to retrieve a gun. When he walked back outside, he saw Petitioner standing by a telephone pole with a gun. Mr. Weaver testified that Petitioner shot at him several times. Mr. Weaver returned fire once or twice. Mr. Weaver testified that another individual, Deonco Franklin, then began shooting at him, and shot him in the arm and the backside.

Petitioner presented an alibi defense. Petitioner's mother testified that Petitioner attended her birthday party in the City of Detroit on the day of the shooting. Kathy Johnson testified that she attended Petitioner's mother's birthday party and Petitioner was present.

#### III. Procedural History

Petitioner was charged in Jackson County Circuit Court of assault with intent to commit murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony. The trial court sua sponte declared a mistrial in Petitioner's first trial after the jury was impaneled when the prosecutor informed

the trial court that a prosecution witness was temporarily out of state, despite having been subpoenaed for the trial. Deonco Franklin was a codefendant in this proceeding.

Petitioner's attorney filed a motion for dismissal of the charges because retrial would violate his right to be free from double jeopardy. The trial court denied the motion. *People v. Pryor*, No. 97081127 (Jackson County Circuit Court Nov. 7, 1997).

Petitioner was retried three weeks after the mistrial was declared. He was convicted on all counts. On January 7, 1998, Petitioner was sentenced to twenty-five to fifty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claim:

> The double jeopardy clause bars retrial if a court orders a mistrial in the absence of manifest necessity or defense consent. The trial court *sua sponte* ordered a mistrial because a police officer endorsed by the prosecution, and wanted as a witness by the defense, ignored his subpoena and left the state. The trial court erred in ordering a retrial following the mistrial.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Pryor*, No. 208796, 1999 WL 33444290 (Mich.App. May 21, 1999).

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, presenting the same claim presented on direct review to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal because there was "no majority of the Court in favor of granting leave to appeal." *People v. Pryor*, 462 Mich. 878, 613 N.W.2d 722 (Mich.2000). Three Justices would have granted leave to appeal, and Justice Markman abstained because he sat on the Mich-

igan Court of Appeals' three judge panel affirming Petitioner's conviction.

Petitioner then filed the pending petition for a writ of habeas corpus, through counsel, presenting the following claim:

> Was retrial of Petitioner, after the trial judge abruptly declared a mistrial *sua sponte*, due to the temporary absence of a police officer listed as a prosecution witness barred by the double jeopardy clause of the federal constitution where Petitioner did not retain primary control over the proceedings?

## IV. *Standard of Review*

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410–11, 120 S.Ct. 1495.

## V. *Analysis*

■ Petitioner presents a single claim for habeas corpus relief. He argues that his retrial violated the Double Jeopardy Clause, and that the state court's holding that no violation occurred was contrary to and an unreasonable application of Supreme Court precedent.

■ The Double Jeopardy Clause of the Fifth Amendment "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *U.S. v. Dinitz*, 424 U.S. 600, 605, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).[2] "As part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" *Oregon v. Kennedy*, 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). Jeopardy attaches when the original jury panel is seated and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Once jeopardy attaches, a defendant may not be retried after a mistrial has been declared unless (1) there is a "manifest

necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial. *Dinitz*, 424 U.S. at 606–07, 96 S.Ct. 1075.

In this case, the Michigan Court of Appeals held that Petitioner's retrial was permissible because Petitioner impliedly consented to the mistrial. The state court reasoned, in pertinent part:

Both the United States Constitution and the Michigan Constitution prohibit placing a defendant twice in jeopardy for a single offense, which protects a defendant against both successive prosecutions and multiple punishments for the same offense. U.S. Const. Am V; Const.1963, art. 1, § 15; ... Generally, jeopardy attaches in a jury trial once the jury is impaneled and sworn. *People v. Mehall*, 454 Mich. 1, 4, 557 N.W.2d 110 (1997). At that point, the defendant has a constitutional right to have his or her case completed and decided by that tribunal.... When a mistrial is declared, retrial is permissible under double jeopardy standards where (1) manifest necessity required the mistrial, or (2) the defendant consented to the mistrial and the mistrial was caused by innocent conduct on the part of the prosecutor, or judge or by factors beyond their control. *Mehall*, *supra* at 4, 557 N.W.2d 110; *People v. Dawson*, 431 Mich. 234, 252–53, 427 N.W.2d 886 (1988). Here, the jury was impaneled and sworn before the judge declared a mistrial. Therefore, defendant's retrial violated double jeopardy unless manifest necessity existed for the mistrial or defendant consented to the mistrial. Because we conclud[e] that defendant impliedly consented to the mistrial, we hold that defendant's retrial did not vio-

---

**2.** The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Ben-* *ton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

late the prohibition against double jeopardy.

In determining whether a defendant has consented to a mistrial, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed." *People v. Benton*, 402 Mich. 47, 54, 260 N.W.2d 77 (1977), citing *United States v. Dinitz*, 424 U.S. 600, 607–09, 96 S.Ct. 1075, 47 L.Ed.2d 267; . . . (1976). In that regard, the relevant issue is whether a defendant consented to the discontinuance of the trial, rather than whether he formally consented to the declaration of a mistrial. . . . Defendant's consent can be express or implied. *People v. Hoffman*, 81 Mich.App. 288, 297, 265 N.W.2d 94 (1978), . . . Moreover, acting on a defendant's behalf, counsel may provide the requisite consent. *Benton*, *supra* at 55, 260 N.W.2d 77; *Hoffman*, *supra* at 298, 265 N.W.2d 94.

In this case, defense counsel promptly concurred when counsel for co-defendant indicated that Crance was a "necessary party [sic] to this matter." Further, emphasizing the importance of the testimony, defense counsel indicated that he had anticipated using Crance's testimony to impeach the complainant. Then, when the trial court declared a mistrial, neither defendant nor his counsel objected. While mere silence or failure to object to the jury's discharge is not consent, *People v. Harvey*, 121 Mich. App. 681, 688, 329 N.W.2d 456 (1982), defendant's silence, coupled with the fact that the mistrial was clearly granted for defendant's benefit and defense counsel argued that Crance was indispensable, leads us to conclude that defendant impliedly consented to the discontinuation of his trial. [footnote omitted]

Finding defendant's retrial constitutionally permissible is consistent with the underlying rational of the prohibition against double jeopardy . . .

*People v. Pryor*, slip op. at 2–3.

Although finding that Petitioner's rights under the Double Jeopardy Clause were not violated, the state court found the trial court's conduct in *sua sponte* declaring a mistrial without considering other, more conservative options disturbing:

We are disturbed by the manner in which the trial court handled this issue. It is a well established legal principle that mistrials are to be sparingly ordered. When faced with a possible mistrial, a trial court should proceed with extreme caution. A conscientious trial judge should develop a full and complete record encompassing the legal positions of all involved litigants. The trial court failed to proceed with such caution in the instant case. The course of action chosen by the trial court, however, does not render the decision to retry defendant constitutionally impermissible. The trial court's decision to grant the mistrial was motivated solely by a desire to insure that defendant received a fair trial with an opportunity to present a full and complete defense. The trial court did not in any manner advance, directly or indirectly, the interests of the prosecutor. Rather, the court was merely attempting to accommodate defendant, whose counsel characterized police officer Crance as a "necessary" witness. Under the circumstances, we find that the mistrial was the result of innocent, albeit hasty, conduct on the part of the trial judge.

*People v. Pryor*, slip op at 3–4, n. 1.

First, Petitioner argues that the state court's decision is contrary to Supreme Court precedent because the facts presented in Petitioner's case are materially indistinguishable from those presented in *Downum v. U.S.*, 372 U.S. 734, 83 S.Ct. 1033,

10 L.Ed.2d 100 (1963), but the state court reached a different holding than that reached in *Downum.* "A state court decision will ... be contrary to [the Supreme] Court's established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams,* 120 S.Ct. at 1519–20.

In *Downum,* the defendant argued that his rights under the Double Jeopardy Clause were violated when he was retried following a mistrial declared on the prosecutor's motion. Defendant was charged with seven counts related to stealing from the mail and forging and uttering checks so stolen. On the morning of the day set for trial, both sides stated that they were ready to proceed and a jury was selected, sworn, and directed to return in the afternoon. When the jury returned, the prosecution asked that the jury be discharged because its key witness on Counts 6 and 7 was not present. The defendant moved that Counts 6 and 7 be dismissed and that the trial proceed with respect to the remaining counts. The trial court denied the defendant's motion and discharged the jury over the defendant's objection. The case was recalled two days later and a jury impaneled and sworn. The defendant argued former jeopardy, but the trial court denied that argument. A trial ensued and the defendant was found guilty. *Id.* at 1033–34.

The Supreme Court held that the defendant's right to be free from double jeopardy had been violated. The Court recognized that:

> At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an imperious necessity to do so.... The discre-

tion to discharge the jury before it has reached a verdict is to be exercised only in very extraordinary and striking circumstances.

*Id.* at 1034 (internal citations omitted).

The Court held that, in the case before it, "imperious necessity" warranting discharge of the jury did not exist. The missing witness had not been served with a summons, nor had other arrangements been made to secure his presence. The defendant moved to dismiss the two counts to which this missing witness was essential and proceed to trial with the remaining counts. The prosecution opposed this motion. The Court held that a prosecutor may not, after the impaneling of a jury, discover that his evidence is insufficient and, without penalty, have a mistrial declared. *Id.* at 1035.

In contrast to *Downum,* in this case, the jury was discharged *sua sponte* by the trial judge, not upon the prosecutor's motion. The prosecutor did not represent that the missing witness was essential to the prosecution and, in fact, indicated that he had not planned to call the missing witness to testify. In addition, in contrast to the defendant in *Downum,* Petitioner did not affirmatively represent that he wished to proceed without this witness. Instead, Petitioner concurred with counsel for co-defendant's statement that this witness was necessary. Thus, the Court finds that the set of facts with which the Supreme Court was confronted in *Downum* are distinguishable from the set of facts presented by Petitioner in this case. Consequently, the state court's decision was not "contrary to" the Supreme Court's decision in *Downum.*

Petitioner also claims that the Michigan Court of Appeals' decision is an unreasonable application of *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Petitioner argues *Dinitz* requires that a defendant can consent to a mistrial

only where the defendant retains "primary control over the course to be followed," *id.* at 609, 96 S.Ct. 1075, and, because Petitioner did not retain primary control, the state court's finding of implied consent was contrary to *Dinitz*.

The Supreme Court did not explicitly articulate how a defendant retains "primary control over the course to be followed." *Id.* The Ninth Circuit Court of Appeals has held that a defendant did not retain primary control over the course of the proceedings where the trial court declared a mistrial over defense counsel's strenuous objections. *Weston v. Kernan,* 50 F.3d 633, 637 (9th Cir.1995).

The First Circuit Court of Appeals has held that a defendant retained primary control over the course to be followed where the trial court judge, a few minutes after *sua sponte* declaring a mistrial but before discharging the jury, returned to the courtroom and stated her desire to continue with the trial unless either party objected to proceeding. *Creighton v. Hall,* 310 F.3d 221, 227–28 (1st Cir.2002).

The Sixth Circuit has held that consent to a mistrial need not be express, but cautioned that "[c]onsent should not be assessed by the mechanical application of an absolute rule, but rather by an analysis informed by the weighty considerations in-

herent in criminal jeopardy." *Glover v. McMackin,* 950 F.2d 1236, 1240 (6th Cir. 1991) (citing *Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)). The Sixth Circuit further held:

> [C]onsent should be implied "only where the circumstances positively indicate a defendant's willingness to acquiesce in the [mistrial] order."

*Id.* (quoting *Jones v. Hogg,* 732 F.2d 53, 57 (6th Cir.1984)). Consent may not be inferred "merely because a defendant did not object to the declaration of a mistrial." *U.S. v. Gantley,* 172 F.3d 422, 429 (6th Cir.1999). Instead, "a defendant's failure to object to a mistrial implies consent thereto only if the sum of the surrounding circumstances positively indicates the silence was tantamount to consent."[3] *Id.*

In *Glover,* the Court found that the defendant did not impliedly consent to a mistrial. The Court noted that the defendant did not have an opportunity to object to the mistrial. At no time prior to mistrial actually being declared, was a mistrial mentioned, and, following declaration of the mistrial the jury was immediately dismissed. The Court held that "[t]he summary nature of the trial court's actions, a swift declaration followed by the immediate dismissal of the jury and adjournment

---

3. Implied consent to a mistrial does not implicate the line of Supreme Court cases holding that fundamental Constitutional rights may not be deemed waived on a silent record. *See Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)(holding that waiver of the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accuser's cannot be presumed from a silent record). In *Dinitz,* the Supreme Court rejected the argument that a defendant's consent to mistrial is a waiver that, to be valid, must meet the knowing, intelligent, and voluntary standard set forth in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Court explained:

This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary and intelligent waiver of a constitutional right.

*Dinitz,* 424 U.S. at 609, n. 11, 96 S.Ct. 1075.

of the court, rendered an objection both unlikely and meaningless." *Id.* at 1240 (citing *United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)).

In contrast, in *United States v. Gantley,* 172 F.3d 422 (6th Cir.1999), the Sixth Circuit Court of Appeals held that the defendant impliedly consented to a mistrial so that retrial was not barred by double jeopardy. The defendant, John Gantley, was charged with violating the Fair Credit Reporting Act, 15 U.S.C. § 1681(q). A first trial ended in a mistrial when the jury declared itself hopelessly deadlocked. Prior to the second trial, Gantley moved the district court to admit the results of his voluntary polygraph examination, which had been excluded from his first trial. The district court again excluded the polygraph result. Gantley testified in his own defense. Very shortly after the prosecutor began cross-examination of Gantley, Gantley attempted to bolster his credibility by mentioning that he had taken a polygraph examination. The district judge immediately told the jury to leave the courtroom and, outside the jury's presence, stated that he was going to declare a mistrial. However, the district judge did not discharge the jury at that time. He discussed the matter further with both attorneys in an off-the-record colloquy, during which potential alternatives to a mistrial were discussed. After this discussion, the district judge remained of the belief that a mistrial was necessary. During this off-the-record discussion, Gantley's counsel did not object to a mistrial. Also, prior to discharging the jury, the district judge twice asked Gantley's counsel whether there was "anything else," and counsel failed to lodge any objection to the mistrial.

The Sixth Circuit held that Gantley could not avoid the "implication of consent merely by noting he did not express consent; his absence of explicit assent must be examined in light of all the circumstances surrounding it." *Id.* at 429. The Court concluded that, considering all of the circumstances surrounding the mistrial, Gantley impliedly consented to the mistrial, even though "Gantley's 'positive indication' of consent was in the form of silence." *Id.*

In the pending case, to determine whether Petitioner retained primary control of the proceedings and impliedly consented to a mistrial, the Court closely examines Petitioner's attorney's conduct prior to and immediately after the trial court's *sua sponte* declaration of a mistrial. After the jury was sworn, the trial court judge briefly excused the jury. Initially, the trial court judge indicated that he was going to give preliminary instructions regarding the missing witness, Police Officer Crance. Counsel for co-defendant Daniel J. Reid requested clarification regarding what Officer Crance's testimony would have been. Joseph Filip, counsel for Petitioner, joined in the request. The prosecutor indicated that Officer Crance was the first police officer to interview the victim at the scene, but other officers had subsequently interviewed him. The following colloquy ensued:

> Mr. Reid: We may have some difficulty with that, Your Honor. I mean, if he was, in fact, the first officer there and the one who did the initial interview, he is, in fact, a necessary party in this matter.
>
> There are certain questions that I would like to ask that person that I think may be critical.
>
> Mr. Filip: Your Honor, our position for Mr. Pryor is the same. Officer Crance did interview Mr. Weaver, he did interview Joseph Jewell, Heidi Taylor, and Jennifer Taylor.
>
> We do anticipate there to be numerous inconsistencies in Mr. Weaver's

testimony here with what he told police officers before, as well as his preliminary examination transcript, and I had fully anticipated to use Officer Crance for impeachment of Mr. Weaver, at least Mr. Waver.

The Court: Well, I guess I have no alternative, then, but to have a mistrial and I guess we should charge this—can we charge this to Officer Crance in some way? . . . I want him held in contempt of court. When he hits town, I don't care of [sic] he's a police officer or not, he'll be brought in here, and he's going to be in contempt of court.

Mr. Lloyd: That's fine.

The Court: Which means stick him in jail. It's just crazy.

Mr. Filip: Your Honor, I'd have to— are you declaring a mistrial?

The Court: Yes, sir.

Mr. Filip: I would have to, on behalf of Mr. Pryor, then, ask for dismissal of the charges because this is the fault of the prosecution. I understand Mr. Lloyd's position and to be honest with you also understand how this works in terms of the subpoena, the officer not appearing, but Mr. Pryor has been in jail since his arrest by Officer Rogers some time ago. He cannot post bond at the level it is and I think this would put him in jeopardy with the jury now sworn.

Mr. Reid: Your Honor, I would likewise concur with Brother Counsel in that regard. We, in fact, are ready to proceed to trial at this time. . . .

Mr. Lloyd: Your Honor, I have a returned subpoena in this matter. And while it is defense counsel's choice to wish to attack me, I have done what is required under the court rules . . . .

The Court: Is he going to be gone all week?

Mr. Lloyd: Thursday, sometime on Thursday he's supposed to be back.

The Court: We'll be through by then. Okay. Well, we'll have to reset a new trial date.

Mr. Reid: Is the Court going to rule in regards to defense counsel's motion for dismissal?

The Court: No. I better deny that, through no fault of the prosecution in this person not being here.

Tr., 11/7/97, pp. 52–55. The trial court then proceeded to set a new trial date for November 24, 1997. Petitioner's attorney also moved that the trial court reconsider Petitioner's bond of $50,000 and issue a personal recognizance bond. The trial court declined to issue a personal recognizance bond and declined to decrease the bond amount. Following this discussion, the jury was returned to the courtroom and discharged.

Petitioner's attorney immediately moved for a dismissal of the charges once a mistrial was declared. However, he never objected to the mistrial despite having had sufficient time to have done so. Petitioner's attorney, instead, insisted that the missing witness was a crucial witness and it would be unfair to proceed without him. In contrast to defense counsel in *Glover*, Petitioner's attorney had ample opportunity to voice an objection to the mistrial. Although the trial court *sua sponte* declared the mistrial, the Court finds that, because Petitioner had the opportunity to object to the mistrial, but failed to do so, and insisted that the trial could not fairly proceed without the missing witness, Petitioner retained primary control over the course to be followed.[4] In addition, the

---

4. As was the Michigan Court of Appeals, this Court is disturbed by the trial court's failure to consider alternatives to granting a mistrial. However, the court's failure in this regard does not impact this Court's consent analysis.

Court notes that counsel's objection to Officer Crance's absence evidenced a lack of trial preparation. Officer Crance testified at Petitioner's retrial. Defense counsel's questioning of him was limited and Officer Crance's testimony was not particularly relevant to or helpful to Petitioner's defense. Thus, considering the totality of the circumstances, the Michigan Court of Appeals decision that Petitioner consented to the mistrial was not an unreasonable application of Supreme Court precedent.

## VI. *Conclusion*

The Court concludes that Petitioner's right to be free from double jeopardy was not violated. Therefore, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.